791 P.2d 665

**M & M AUTO STORAGE POOL, INC.,**
an Arizona corporation,
**Plaintiff–Appellee,**

and

**City of Phoenix, a municipal corpora-
tion; City of Phoenix Board of
Adjustments, Defendants–Appellees,**

v.

**CHEMICAL WASTE MANAGEMENT,
INC., Defendant–Appellant.**

**No. 1 CA–CV 88–005.**

Court of Appeals of Arizona,
Division 1,
Department E.

May 1, 1990.

Fay & Webb by Richard E. Fay, Phoenix,
for plaintiff-appellee.

Edward P. Reeder, Asst. City Atty., Phoenix, for defendants-appellees.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Scott E. Boehm, Philip C. Gerard and Laurence A. McHugh, Phoenix, for defendant-appellant.

## OPINION

SHELLEY, Judge.

This appeal is from a superior court order in a special action proceeding remanding a zoning application to the City of Phoenix Board of Adjustments. The order directs board members to clarify their vote on the application of a hazardous waste storage business to maintain its facility in an A–1 zone or alternatively, that the application be determined by a newly constituted Board of Adjustments. The primary issue on appeal is whether the trial court abused its discretion in refusing to affirm the decision of the Board of Adjustments.

We reverse the order of the trial court and reinstate the board's decision.

## FACTS AND PROCEDURAL HISTORY

Chemical Waste Management, Inc. (Chemical Waste) stores hazardous industrial wastes at its business site in Phoenix pending transfer of the waste to approved disposal facilities in California. These wastes are neither explosive nor radioactive.

In December, 1984, a neighbor of Chemical Waste sent a letter to: "Mr. Atonna, City of Phoenix Planning," inquiring about the safety of Chemical Waste's operation. The letter was forwarded to Zoning Enforcement Supervisor Paul Secrest. Secrest asked City of Phoenix Zoning Administrator Peter Atonna to determine whether Chemical Waste's operation was a permitted use in an A–1 zone.

The zoning administrator conducted a hearing on January 31, 1985, and issued his opinion that Chemical Waste's business was a permitted use in the A–1 district.

M & M Auto Storage Pool, Inc. (M & M), an adjacent property owner, appealed the zoning administrator's ruling to the City of Phoenix Board of Adjustments pursuant to A.R.S. § 9–462.06(G)(1).

The Board of Adjustments conducted a hearing on April 4, 1985, and approved the zoning administrator's determination that Chemical Waste's facility was an appropriate use in an A–1 zone. M & M filed a special action complaint in superior court pursuant to A.R.S. § 9–462.06(K). The special action complaint alleged that the board's decision was arbitrary and capricious.

The superior court remanded this matter back to the Board of Adjustments for clarification of its vote or for reconsideration by a newly constituted board and later denied Chemical Waste's motion to reconsider the order. The City of Phoenix, the Board of Adjustments, and Chemical Waste were defendants below, but only Chemical Waste filed a notice of appeal. The parties stipulated that the remand would be stayed pending the appeal.

## JURISDICTION

M & M argues that because the trial court's order remanded the case, it was not a final decision and cannot be reviewed by this court. We disagree.

We find no Arizona appellate decisions addressing the precise jurisdictional argument raised by M & M. However, the procedural posture of this case is analogous to that of the parties in *Caldwell v. Arizona State Bd. of Dental Examiners*, 137 Ariz. 396, 670 P.2d 1220 (App.1983). Caldwell sought review of a decision of the Arizona State Board of Dental Examiners to suspend his certificate for the practice of denture technology. The superior court determined that the board had not followed proper procedures, and remanded the case to the board for another hearing. Both Caldwell and the board filed appeals from the remand order. This court affirmed the trial court's decision without discussion of its jurisdiction.

Other states with statutory review procedures similar to A.R.S. § 9–462.06 permit appellate review of trial court orders re-

manding zoning matters to administrative boards. *See generally* 4 R. Anderson *American Law of Zoning* § 27.39 (3d ed. 1986). *But see North American Holding Corp. v. Murdock,* 6 A.D.2d 596, 180 N.Y.S.2d 436 (1958), *aff'd* 6 N.Y.2d 902, 160 N.E.2d 926, 190 N.Y.S.2d 708 (1959).

The superior court's order was a final determination of the parties' rights under its special action authority. The order stated:

> IT IS THEREFORE ORDERED that this appeal be remanded to the **CITY OF PHOENIX BOARD OF ADJUSTMENTS** to have the members of the **BOARD** clarify on the record their vote on the application of **CHEMICAL WASTE MANAGEMENT, INC.** to maintain its facility in the A–1 zoned area, and in the event the **BOARD OF ADJUSTMENTS** is unable to clarify its vote of April 4, 1985, that the application of **CHEMICAL WASTE MANAGEMENT, INC.** as aforesaid be determined by a newly constituted Board of Adjustments. [Emphasis in original.]

The special action has been completed except as to this appeal. If the parties returned to the Board of Adjustments pursuant to the remand order, they would have no further recourse to the superior court in this special action. If either party was dissatisfied with the board's action after remand, that party would have to file a new special action in superior court. Therefore, the superior court has entered a final order in a special proceeding commenced in superior court for purposes of A.R.S. § 12–2101(B).

We conclude that we have jurisdiction to review the superior court's order.

### FAILURE TO PROSECUTE

Chemical Waste contends that this case should never have reached the point at which Judge Stover issued her remand order. It contends that Judge Stover abused her discretion by setting aside a prior order of dismissal which had been entered pursuant to Rule V, Uniform Rules of Practice of the Superior Court of Arizona (hereinafter Uniform Rules).

■ M & M argues that this is not an appealable order. This is incorrect. An order denying or granting a motion to set aside a judgment under Rule 60(c), Arizona Rules of Civil Procedure, is appealable as a "special order made after final judgment." A.R.S. § 12–2101(C). *See Sullivan & Brugnatelli Advertising Co., Inc. v. Century Capital Corp.,* 153 Ariz. 78, 79, 734 P.2d 1034, 1035 (App.1986); *Cline v. Ticor Title Ins. Co.,* 154 Ariz. 343, 344, 742 P.2d 844, 845 (App.1987). We therefore consider the merits of Chemical Waste's argument.

■ The court administrator's office sent a notice to M & M on February 13, 1986, stating that the case would be placed on the inactive calendar for dismissal on May 13, 1986, unless a motion to set the certificate of readiness was filed. However, before May 13, 1986, the city and Chemical Waste filed motions for summary judgment. On April 22, 1986, Judge Stover denied the motions for summary judgment by minute entry order. In the minute entry, Judge Stover stated that the case should be remanded to the Board of Adjustments for clarification. However, M & M did not file a cross motion for summary judgment or take other action to obtain a judgment.

On June 10, 1986, the court administrator dismissed M & M's special action for lack of prosecution under Rule V, Uniform Rules. The order was signed by Judge Noel Fidel on behalf of Judge Stover.

On June 19, 1986, M & M moved to set aside the dismissal, arguing that it had relied on the April 22, 1986, order and requested a remand order.

M & M argued that Rule V does not apply in special actions where review is of a record and there will be no trial de novo. It contended that no reason existed for filing a list of witnesses and exhibits and motion to set.

Judge Stover granted M & M's motion to set aside the dismissal under Rule 60(c)(1) and (6), Arizona Rules of Civil Procedure.

Rule 60(c) allows a final judgment to be set aside for reasons of: "(1) mistake, inadvertence, surprise or excusable neglect; ..." or "(6) any other reason justifying relief from the operation of the judgment."

M & M's attorney claimed "excusable neglect" because he thought he could rely on the trial court's April 22, 1986, minute entry.

Chemical Waste contends that M & M's actions were not excusable neglect because counsel knew or should have known that although the court had denied the city and Chemical Waste's motions for summary judgment, the case was not finished. Chemical Waste argues that counsel's failure to act to obtain a final judgment and misplaced reliance on the minute entry do not constitute excusable neglect. It argues that these were not the acts of a reasonably prudent person. *See Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984).

Judge Stover found that M & M's reliance upon the minute entry was excusable neglect and expressed concern that M & M would be unable to file its special action if the dismissal were not set aside. In addition, she found that Rule V was not totally applicable because M & M was not entitled to a trial de novo and no witnesses or exhibits would be presented.

The requirements for relief from Rule V dismissal under Rule 60(c)(6) have been discussed at length in *Bickerstaff v. Denny's Restaurant, Inc.,* 141 Ariz. 629, 688 P.2d 637 (1984), *Gorman v. City of Phoenix,* 152 Ariz. 179, 731 P.2d 74 (1987), and *Cline v. Ticor Title Ins. Co.,* 154 Ariz. 343, 742 P.2d 844 (App.1987).

In *Bickerstaff,* the Arizona Supreme Court upheld a trial court's denial of a motion to set aside a Rule V dismissal. The decision notes that to justify relief under subsection (6), extraordinary circumstances of hardship or injustice must be present. It noted that although a factor relevant to subsections (1)–(5) would not alone justify setting aside a dismissal under subsection (6), it might be one of several factors to be considered in determining whether there were extraordinary circum-

stances justifying relief. *Bickerstaff,* 141 Ariz. at 632, 688 P.2d at 640.

In *Gorman,* the Arizona Supreme Court reversed the trial court's denial of plaintiff's motion to set aside a dismissal for lack of prosecution under Rule V. The court emphasized that the determination of whether a specific case presents "extraordinary," "unique," or "compelling" circumstances is left to the sound discretion of the trial court on a case-by-case basis. However, the court noted that Rule V is aimed at disposing of abandoned cases, not cases in which a party who is actively prosecuting the case makes a procedural error. The court stated that the trial court should consider granting Rule 60(c)(6) motions to satisfy Rule V dismissal where there is evidence that:

(1) the parties were vigorously pursuing the case, (2) the parties were taking reasonable steps to inform the court of the case's status, and (3) the moving party will be substantially prejudiced by, for example, the running of the limitations period if the dismissal is not set aside. If all these factors are present, even doubtful cases should be resolved in favor of the party moving to set aside the dismissal.

*Id.* 152 Ariz. at 183–84, 731 P.2d at 78–79.

In *Cline,* this court noted that the major distinction between *Bickerstaff* and *Gorman* was that the parties were actively litigating in *Gorman.*

In this case, the parties had been vigorously litigating the defendant's motion for summary judgment. We do not view counsel's reliance on a minute entry and failure to obtain a final resolution of the special action for almost two months as excusable neglect for purposes of Rule 60(c)(1). However, under the guidelines of *Gorman* and its emphasis on the parties' active involvement in the litigation, we find that the trial court did not abuse its discretion by setting aside the order of dismissal under Rule 60(c)(6).

## STANDARD OF REVIEW OF THE SPECIAL ACTION

■ The superior court's primary purpose in special action review of a decision

by a Board of Adjustments is to determine whether the decision was arbitrary, capricious, or an abuse of discretion. *Blake v. City of Phoenix*, 157 Ariz. 93, 96, 754 P.2d 1368, 1371 (App.1988); *Book Cellar, Inc. v. City of Phoenix*, 139 Ariz. 332, 334, 678 P.2d 517, 519 (App.1983). The superior court should not substitute its judgment for that of the agency even where it would have reached a different decision had it been the original arbiter of the issues. *Mueller v. City of Phoenix*, 102 Ariz. 575, 581, 435 P.2d 472, 478 (1967).

■ This court reviews the evidence presented by the record filed in the superior court, and we may substitute our opinion for that of the superior court because we are reviewing the same record. *Arkules v. Board of Adjustment of Paradise Valley*, 151 Ariz. 438, 441, 728 P.2d 657, 660 (App.1986). We must allow the board's decision to stand if there is some credible evidence to support it. *Id.*; *Burroughs v. Town of Paradise Valley*, 150 Ariz. 570, 573, 724 P.2d 1239, 1242 (App.1986).

## DID THE SUPERIOR COURT ABUSE ITS DISCRETION IN REMANDING THIS MATTER TO THE BOARD OF ADJUSTMENTS?

■ The record before the superior court and this court consists of a transcript of the April 4, 1985, hearing of the Board of Adjustments and the documents which were presented to the board. These documents include the evidence which was presented to the zoning administrator and the background materials attached to that decision.

Judge Stover's order states that she was remanding this matter to the Board of Adjustments in part because counsel for Chemical Waste and others had made incorrect statements of fact which were relied on by the board. She identified the statements as comments that four validly issued approvals had been made by the city before the hearing. Our review of the record indicates the following.

Six people spoke at the April 4, 1985, hearing in opposition to Chemical Waste's position. Their arguments were based on perceived safety problems, the proximity of the facility to residential areas, the possibility of catastrophic accidents and examples of ordinances from other cities which prohibit hazardous waste storage in zones similar to Phoenix's A–1 zone. Chemical Waste's attorney attempted to counter those arguments. As part of his presentation, he referred to a history of contacts between Chemical Waste and the City of Phoenix. At one point counsel stated that Chemical Waste had been operating at its site under four validly issued approvals. In fact, there had not been four formal approvals. However, there were four prior contacts with the City of Phoenix.

When Chemical Waste originally decided to open a facility in Phoenix, it considered locating in an A–2 zone. On July 14, 1980, Chemical Waste caused a letter to be written to the zoning enforcement supervisor. The letter requested an interpretation of whether the proposed business was permissible in an A–2 zoning district without the need of a use permit or variance.

The enforcement supervisor held a hearing on the request and issued findings of fact and a decision concluding that chemical waste was permitted in an A–2 district. His summary of the interpretation also indicated that "[c]hemical plants and similar uses are permitted in the A–1 and A–2 districts." Chemical Waste subsequently decided to consider locating at a different site in an A–1 zone. It called the zoning enforcement supervisor to make sure that it actually understood his previous interpretation. The supervisor made a "supplemental interpretation" in a letter stating that a waste-storage-and-transfer facility would be permitted in either an A–1 or an A–2 zoning district. Chemical Waste eventually decided to open its business in an A–1 zone and notified the zoning administrator and again requested confirmation that it could be located at that site. In a letter dated May 1, 1981, the zoning administrator advised Chemical Waste that its proposed use was permissible in the A–1 zone.

Subsequently, the zoning enforcement supervisor received a letter from one of Chemical Waste's neighbors triggering the formal hearing before the zoning administrator which led to the appeal to the Board of Adjustments.

Although this history does not constitute four formal approvals of Chemical Waste's operation, counsel's statement cannot reasonably be found to be misleading in light of the fact that the entire correspondence was presented to the Board of Adjustments. Further, several Phoenix Planning Department employees and an opponent of Chemical Waste's position all discussed and specifically identified the four documents as Supervisor Secrest's decision of August 21, 1980, Zoning Administrator Atonna's letters of November 18, 1980, and May 1, 1981, and Atonna's January 31, 1985, decision, which was the subject of the appeal. The chairperson of the board acknowledged that the board was in possession of all those documents and was following along with the documents as each one was discussed by the speakers.

Judge Stover stated that her decision was also based on the fact that she believed that comments made by board members indicated that they were confused or in error as to their duty. She referred to a statement made by Chairperson Espinosa which she construed to be a statement that the chairperson felt that the board was not the proper forum to review the zoning administrator's decision. Chairperson Espinosa commented that, "I personally don't think it is our job to interpret this particular case." However, our review of the record indicates that Chairperson Espinosa's entire statement was that she agreed that the zoning ordinance as it was written permitted Chemical Waste to operate in an A-1 zone. She later expressed her opinion that she agreed with another board member, Bleier, that the Phoenix City Council ought to reexamine the zoning ordinance. She stated that the Board of Adjustments was not the proper forum for such reexamination.

There is nothing in the record to indicate that those board members who voted for the application believed that they could not interpret the ordinance. Some members simply indicated a disagreement with the ordinance and acknowledged that there were other agencies involved in issuing permits for these kinds of facilities who were directly responsible for safety requirements. Particular references were made to the Arizona Department of Health Services.

We find that the record in this case does not support the trial court's conclusion that the board did not realize what it was supposed to do in reviewing the zoning administrator's decisions.

The board reviewed the zoning administrator's written findings of facts and background memorandum in which he made a careful examination of Chemical Waste's operations in conjunction with those which are permitted to be in A-1 and A-2 districts. Atonna had examined the state and federal regulations concerning waste-transfer-and-storage facilities. He placed particular emphasis on the fact that Chemical Waste did not handle explosive materials, radioactive materials, or the disposal, processing, or manufacture of hazardous materials. Such activities are only allowed in an A-2 zone.

Atonna concluded that a waste-transfer-and-storage facility is closely analogous to examples of permitted use as set forth in the zoning ordinance for an A-1 zone. All the information upon which he relied was forwarded to and considered by the Board of Adjustments.

We find nothing in the record to indicate that the board acted arbitrarily or capriciously. Neither do we find any evidence that the board misunderstood its function or failed to provide an adequate hearing on this matter. We therefore conclude that the decision of the Board of Adjustments should be reinstated.

Because we conclude that there was sufficient evidence before the Board of Adjustments to support its decision, we do not address Chemical Waste's assertion that the city's zoning function has been preempted by the Arizona Department of Health Services pursuant to A.R.S. §§ 36-

2821–36–2827. The judgment and remand order entered by the trial court is reversed. This case is remanded to the trial court with directions to reinstate the April 4, 1985, decision of the Board of Adjustments.

EUBANK, P.J., and VOSS, J., concur.