871 P.2d 698

**Patricia Ann ULIBARRI and Peter Ulibarri, her husband, Plaintiffs–Appellants,**

v.

**Dean GERSTENBERGER, M.D. and Marta Gerstenberger, his wife, Defendants–Appellees.**

No. 1 CA–CV 91–0154.

Court of Appeals of Arizona, Division 1, Department D.

May 20, 1993.

Review Denied May 3, 1994.*

---

* Martone, J., of the Supreme Court, voted to grant the Petition for Review filed by appellees Gerstenberger.

Van Baalen Law Offices by Peter T. Van Baalen, Phoenix, for plaintiffs-appellants.

Jones, Skelton & Hochuli by Peter G. Kline, David C. Lewis, Phoenix, for defendants-appellees.

## OPINION

GRANT, Presiding Judge.

This is an appeal from summary judgment entered against the plaintiff,[1] Patricia Ann Ulibarri, on the grounds that her action was barred by the statute of limitations. The defendant's motion for summary judgment was granted after the plaintiff failed to file a timely response. She then filed a motion to set aside the summary judgment asserting that her failure to respond was the result of excusable neglect. The trial court found there was no excusable neglect. The court further reaffirmed the summary judgment, holding the plaintiff's "supplemental" response to the motion for summary judgment failed to refute the defendant's showing that the action was time-barred.

### FACTS AND PROCEDURAL HISTORY

On June 14, 1990, the plaintiff filed her verified complaint. In it she alleged that while she was being treated by the defen-

---

1. All references to the parties will be to Patricia Ann Ulibarri and Dean Gerstenberger in the singular.

dant, Dr. Dean Gerstenberger, in 1983 and 1984, he engaged in improper conduct, including sexual fondling and intercourse with her. She asserted causes of action for medical malpractice, sexual touching (of a negligent, willful, wanton and/or malicious nature), intentional infliction of emotional distress and invasion of privacy. The defendant filed an answer and counterclaim on August 24, 1990. The answer admits that the parties had a sexual affair but claims that the affair was consensual. The counterclaim asserts that plaintiff blackmailed defendant in 1986 for the very affair that forms the basis of her complaint. The counterclaim also alleges that the current suit constitutes abuse of process. The plaintiff filed a reply to the counterclaim on September 5, 1990.

On October 17, 1990, the defendant filed a motion for summary judgment. The motion certifies that service on the plaintiff's attorney, Peter T. Van Baalen, was accomplished by mail on October 16. Under the Arizona Rules of Civil Procedure ("Ariz.R.Civ.P.") 56(e) and 6(e), the response was due November 6, 1990. As of Wednesday, November 21, 1990, the plaintiff had not filed a response. On that date, which was the day before Thanksgiving, Judge Anderson's office called Van Baalen's secretary to inquire if a response would be filed. Van Baalen had already left town for Las Vegas for the four-day weekend. His secretary did not call him in Las Vegas.

Van Baalen's secretary informed him of the phone call when he returned on Monday, November 26, 1990. At his direction, the secretary called the defendant's attorney's secretary to request a fax copy of the motion. The motion was not faxed but was placed in the mail. Van Baalen also dictated a letter to defendant's attorney, with a copy to Judge Anderson, noting that he had not received a copy of the motion and asking that one be sent. The letter was mailed on Tuesday, November 27.

Van Baalen received the motion on Wednesday, November 28. The same day, Judge Anderson granted the motion as unop-

posed and also received his copy of Van Baalen's letter to defense counsel. On December 24, 1990, the judge signed the formal judgment,[2] which was entered on December 27, 1990.

On December 18, 1990, Van Baalen filed a "motion for reconsideration/motion for new trial: and motion to vacate judgment."[3] The motion asserted cause under Rules 59(a) and 60(c)(1) and (6) Ariz.R.Civ.P. but contained no affidavits, only arguments of counsel. He also filed a "supplemental" response to the motion for summary judgment. This response contained no statement of facts, but attached affidavits of the plaintiff and Dr. John Ritland, a purported expert in hypnosis. On December 28, 1990, the defendant filed a response to the motion to vacate and reply to the response to the motion for summary judgment. The defendant noted the lack of any affidavit asserting that Van Baalen had not received the motion. Attached was the affidavit of a worker in defense counsel's office asserting the motion was mailed as certified. In reply to the plaintiff's response to the motion for summary judgment, the defendant noted that the affidavits contained inadmissible testimony and that there was no competent evidence refuting the defendant's motion.

On January 15, 1991, the plaintiff filed a reply in support of the motion to vacate attaching affidavits of Van Baalen and two secretaries. Van Baalen stated in his affidavit that his office policy was to have a secretary date stamp motions as they are received and then give the motions to him; that his office had conducted a thorough search and determined that they did not receive a copy of the defendant's motion for summary judgment until November 28, 1990.

Deanne L. Norton stated in her affidavit that she reviews all of Van Baalen's mail and first became aware of the defendant's motion on Wednesday, November 21, 1990, when she received a call from "Jean" in Judge Anderson's office. She told Jean that Van Baalen had not received a copy of any such motion and that he would more than likely

---

2. The judgment contains Rule 54(b) certification.

3. This motion will be referred to as the "motion to vacate."

respond to the motion, if and when received. On November 26, 1990, she requested a copy of the motion from Peter G. Kline's secretary, requesting her to fax the motion as soon as possible. The motion was not faxed, but a copy was received by Van Baalen's office in the mail on November 28, 1990.

Following oral argument on January 30, 1991, the judge denied the motion to vacate and reaffirmed the summary judgment. The court stated:

> The Court has chosen to consider two issues, as well as admissible evidence regarding the Motion for Summary Judgment: 1) if, under Rules 59 or 60, the Court ought to set aside a judgment based primarily upon excusable neglect; and 2) whether, in fact, the plaintiffs' action is time barred. The Court notes that some of the evidence submitted by plaintiffs has been objected to by defendants' counsel, and those objections are well taken. The Court is unable to find excusable neglect and, therefore, sees no reason to set aside the judgment. Equally important is the Court's opinion, which is based upon the evidence that was before the Court on November 28 when the Motion for Summary Judgment was granted and the evidence before the Court today, that the Motion for Summary Judgment is well taken and the plaintiffs' action is time barred.

The court entered a formal order on February 12, 1991. On March 4, the plaintiff filed a notice of appeal from both the judgment and the denial of the motion for reconsideration.

## DISCUSSION

### I. INTRODUCTION

■ The plaintiff's motion to vacate was moot if the trial court properly held that she failed to adequately refute the motion for summary judgment. All that a grant of the motion to vacate would do is give her the opportunity to respond to the merits of the summary judgment motion.[4] The trial court explicitly held that the plaintiff had failed to refute the statute of limitations defense, leaving the summary judgment standing on its merits. We will therefore address the merits of the summary judgment first, bearing in mind that we do so in a light most favorable to the plaintiff. *Chaparral Development v. RMED Int'l Inc.*, 170 Ariz. 309, 823 P.2d 1317 (App.1991).

### II. MOTION FOR SUMMARY JUDGMENT: STATUTE OF LIMITATIONS

■ On the face of the complaint the cause of action appears time-barred. In response to the motion for summary judgment, the plaintiff tacitly conceded that the limitations period is two years under Ariz.Rev. Stat.Ann. ("A.R.S.") section 12–542(1). When a complaint shows on its face that the cause of action is barred by the statute of limitations, the burden is on the plaintiff to show the statute should be tolled. *Cooney v. Phoenix Newspapers, Inc.*, 160 Ariz. 139, 141, 770 P.2d 1185, 1187 (App.1989). The complaint was filed on June 14, 1990, and the alleged acts "commenc[ed] in or about December, 1983." No ending date is asserted, but the plaintiff concedes that she was the defendant's patient during 1983 and 1984 and "remained his patient for approximately one and one half years." The plaintiff asserts that she did not discover and could not have discovered the wrongful acts until about 1990.

■ The motion for summary judgment responded to the plaintiff's assertion that she could not have known of the acts prior to 1990, with the defendant's own affidavit, acting as his own expert, asserting that, in his opinion, there was no reason why the plaintiff could not have remembered the pertinent events, and that she was given no treatment that would have caused her to be unable to remember.[5] The motion asserted: "It is now

---

4. In that sense this case is analogous to a motion to set aside a default judgment, a situation often arising under Rule 60(c)(1). In that circumstance, the defendant must not only establish excusable neglect for having failed to timely answer, but must also show the existence of a meritorious defense to the claim. *See, e.g., Almarez v. Superior Court*, 146 Ariz. 189, 190, 704 P.2d 830, 831 (App.1985).

5. The affidavit states:

incumbent upon the Plaintiff to present by expert testimony why she did not or could not discover the acts of which she complains. Unless she can demonstrate she was under a disability recognized under the law as tolling the statute of limitations, then this motion should be granted...." Once the defendant has established a *prima facie* case entitling him to summary judgment, the plaintiff has the burden of showing available, competent evidence that would justify a trial. *State v. Mecham*, 173 Ariz. 474, 844 P.2d 641 (App. 1992).

The plaintiff's response stated that her memory of the events was impaired because of hypnotic suggestions made to her by the defendant. She alleged that he had conducted the sexual activity while she was under hypnosis and that he had given her post-hypnotic suggestions that she would not remember his conduct. She submitted her own affidavit and that of Dr. John Ritland, M.D. We do not decide in this appeal whether plaintiff's evidence regarding hypnosis complies with "the *Frye* test" or establishes that it is generally accepted in the scientific field that one can be hypnotized and thus made to forget. *Frye v. United States*, 293 F. 1013 (D.C.1923). That issue has not been directly presented in this appeal nor was it directly presented to and ruled on by the trial court. In considering the facts in a light most favorable to the party against whom summary judgment was entered, as we must, we only determine that sufficient evidence was presented to overcome summary judgment on the question of tolling the statute of limitations.

Several courts in the country have now addressed the issue of whether there should be a tolling of a statute of limitations to allow victims to bring incest or sexual abuse claims against their abusers.[6] These cases have generally fallen into two categories—those that use a discovery rule to toll the statute of limitations and those that use "insanity," broadly defined, or duress to toll the statute.

For example, a New Jersey court reversed a ruling that a woman's tort action against her father was time-barred, remanding the case to the trial court for a determination of whether the statute was tolled by either "insanity" or duress. *Jones v. Jones*, 242 N.J.Super. 195, 576 A.2d 316 (A.D.1990). The plaintiff in *Jones* asserted that she repressed all awareness of her father's alleged sexual abuse until two years and nine months after she left home when she revealed the details to a psychiatric social worker during a counseling session. The plaintiff claimed that the mental trauma from the sexual abuse and the duress from her father's threats had the effect of extending the statute of limitations. The New Jersey court said,

> We are convinced that the issues raised by [plaintiff's] allegations of mental impairment and duress should not have been resolved in summary fashion.... Unswerving, mechanistic application of the statute of limitations would at times "inflict obvious and unnecessary harm upon individual plaintiffs" without materially advancing the objectives they are designed to serve.

*Id.*, 576 A.2d at 320 (citations omitted). The court held that the mental trauma suffered as the result of sexual abuse may constitute insanity for the purposes of the tolling statute. Jones's response to the motion for summary judgment raised genuine issues of material fact concerning whether she had the ability and capacity, due to mental affliction

---

1. I am a medical doctor licensed to practice medicine in the State of Arizona. My area of practice is psychiatry.

2. Patricia Ulibarri was my patient in 1984. I am fully familiar with her mental condition in that calendar year and it is my opinion, within a reasonable degree of medical probability, that her mental function permitted her to recognize and remember activities which she engaged in 1984. More specifically, and *with regard to any professional and/or personal* relationship Patricia Ulibarri had with me during 1984, neither her mental condition nor any treatment that I provided her prohibited her from understanding, recognizing and remembering such a relationship.

3. I did not provide Patricia Ulibarri with any treatment which would interfere or prohibit her from understanding, recognizing or remembering any relationship or activities that she had with me.

6. *See* "Tolling the Statute of Limitations in Actions Brought by Adult Survivors of Childhood Sexual Abuse," 33 Ariz. Law Rev. 427 (1991).

allegedly caused by the defendant's conduct, to assert her lawful rights. Likewise, the court also held that Jones's allegations of duress raised genuine questions of material fact not amenable to summary disposition. Although the court said that, unlike insanity, it found no statutory provision tolling the statute of limitations in cases of duress, New Jersey has a long history of instances in which equity has interposed to bar the statute of limitations where some conduct on the part of the defendant has rendered it inequitable that he be allowed to avail himself of the defense.

The policy behind the reasoning of the New Jersey court is sound, and we consider it in relation to the case before us. To allow the defendant to have the advantage of the statute of limitations if his hypnosis of the plaintiff created a mental impairment which rendered her unable to timely assert a legal right would be inequitable.

The Michigan Court of Appeals has held that the statute of limitations will be tolled in a case of sexual assault if the plaintiff can demonstrate that she had psychologically repressed the memory of the facts upon which the claim is predicated and there is corroboration that the sexual assault had in fact occurred. *Meiers–Post v. Schafer*, 170 Mich. App. 174, 427 N.W.2d 606 (1988).

Our case is similar to the Michigan case in that, in this case, there is corroboration that sexual acts had in fact occurred because the defendant, in his answer to the complaint, admits that he had a sexual affair with the plaintiff. In the Michigan case the plaintiff (Meiers–Post) had been a student of the defendant (Schafer) whom she sued for damages resulting from a sexual relationship alleged to have occurred 12 years previous to the filing of the complaint. Schafer admitted having had a sexual relationship with Meiers–Post. The trial court concluded the complaint was time-barred. Meiers–Post claimed she had psychologically repressed memory of the events. She submitted an affidavit from a psychologist which stated in general terms that it is possible for a 30 year old professional female, otherwise normal, to repress the recollection of a high school seduction by a male teacher, to the extent that

she is not able to pursue her legal remedies for a period of ten years or more based on a defensive mental process known as repression.

The Michigan court found no previous Michigan cases which considered whether the psychological phenomena known as repression and post-traumatic syndrome can constitute insanity for tolling purposes. The Michigan court relied heavily on the fact that there was no risk of a stale claim because the defendant had admitted the events took place. Thus the court propounded the following rule:

> ... [T]he statute of limitations can be tolled under the insanity clause if (a) plaintiff can make out a case that she has repressed the memory of the facts upon which her claim is predicated, such that she could not have been aware of rights she was otherwise bound to know, and (b) there is corroboration for plaintiff's testimony that the sexual assault occurred.

*Meiers–Post*, 427 N.W.2d at 610. The Michigan court stated that this test strikes a fair balance between the risk of stale claims and the unfairness of precluding justifiable causes of action. The court then said it could not determine whether the case before it fit within the test as the expert's affidavit was ambiguous in that it was not based on a clinical evaluation of the plaintiff. The summary judgment was reversed and the case was remanded.

In this case, as in the Michigan case, the defendant has admitted that the sexual acts took place so the events of the complaint are corroborated. Furthermore, the expert, Dr. Ritland, bases his statement regarding the mental impairment of the plaintiff due to the defendant's hypnosis on his clinical evaluation of the plaintiff. Therefore this case would meet the Michigan test.

Similar to the Michigan case is a California case in which a daughter, 24 years old, sued her father alleging psychological injuries caused by the father's alleged sexual abuse. The California Court of Appeal held that the doctrine of delayed discovery may be applied in a case where the plaintiff can establish lack of memory of tortious acts due to psychological repression which took place before

plaintiff obtained the age of majority, and which caused plaintiff to forget the facts of the acts of abuse until a date subsequent to which the complaint is timely filed, and the allegations in the complaint were sufficient to resist summary judgment. *Mary D. v. John D.,* 216 Cal.App.3d 285, 264 Cal.Rptr. 633 (6 Dist.1989), *review granted,* 268 Cal.Rptr. 283, 788 P.2d 1155, *review dismissed,* 275 Cal. Rptr. 380, 800 P.2d 858 (Cal.1990). The plaintiff, Mary D., alleged that due to psychological mechanisms of denial and repression caused by the abuse, she was unable to become aware of the existence or nature of her injuries and their probable causal connection to defendant's acts until she was 24 years old. The defendant raised the bar of the statute of limitations. The California court stated:

> We are called upon to decide upon the relative importance of, on one hand, a defendant's right to be free from stale claims, which are difficult to defend and sometimes rest entirely on subjective evidence, and on the other hand, a plaintiff's right to seek redress for an outrageous violation against her which she has allegedly repressed until recently, through no fault of her own and as a direct result of the alleged abuse.

264 Cal.Rptr. at 638.

The California court then held that the doctrine of delayed discovery could be applied. The defendant, John D., argued that the plaintiff had not alleged repression sufficiently to survive his motion for summary judgment. The thrust of defendant's argument was that the plaintiff had not provided competent evidence sufficient to raise a triable issue of fact as to whether delayed discovery was present in the case. The defendant claimed that the plaintiff must show by her affidavits that she had sufficient proof to raise a question of fact. The court said that this contention was incorrect. Defendant did not provide any evidence to negate the plaintiff's theory of delayed discovery although he did provide evidence to raise the time-bar. The California court said that because the allegations of the complaint adequately stated a claim of delayed discovery the motion for summary judgment should

have been denied. However, the court noted that it did not suggest how the trial court should rule on any issue concerning the admissibility or competency of such testimony. *Mary D. v. John D.,* 264 Cal.Rptr. at 640.

Thus, the delayed discovery rule has been applied when, for instance, a victim of childhood sexual abuse alleges that the psychological effects of the abuse prevented timely discovery of the injuries.

Arizona has long recognized the "discovery rule." *See Mayer v. Good Samaritan Hosp.,* 14 Ariz.App. 248, 482 P.2d 497 (1971). In Arizona, the concept of delayed discovery has most frequently been applied in cases of medical and legal malpractice. *See Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984) (medical malpractice); *Lansford v. Harris,* 174 Ariz. 413, 850 P.2d 126 (App.1992) (legal malpractice); *Lawhon v. L.B.J. Inst. Supply Inc.,* 159 Ariz. 179, 765 P.2d 1003 (App.1989); *Matusik v. Dorn,* 157 Ariz. 249, 756 P.2d 346 (App.1988) (tortious injuries to property); *Anson v. American Motors Corp.,* 155 Ariz. 420, 747 P.2d 581 (App.1987) (wrongful death, products liability).

We conclude that the application of delayed discovery is sound when applied to the present facts. Although the plaintiff was not a child, she was in a relationship based on trust toward the defendant, her physician. In the case of a psychiatrist as here, the doctor may be an authority figure for the patient. Therefore, sexual exploitation of this relationship may have factors similar to the sexual exploitation of a child by an adult. Furthermore, the plaintiff has alleged that defendant improperly concealed her cause of action by hypnosis and post-hypnotic suggestion. The defendant does not directly refute this by stating he did not hypnotize plaintiff—he merely states he did nothing which would cause her not to remember.

Courts have held that a statute of limitations will not bar an action when the defendant's negligent or intentional acts caused the plaintiff mental impairment which prevented the plaintiff from understanding what happened or what the legal remedies might be. *Corsey v. State Dept. of Corrections,* 375 So.2d 1319 (La.1979).

■ Arizona does not look with favor on the statute of limitations defense. *Insurance Co. of North America v. Superior Court,* 166 Ariz. 82, 800 P.2d 585 (1990). Therefore, we hold that when the plaintiff presents evidence that the defendant concealed a cause of action thereby preventing the plaintiff from timely filing the claim, and when the defendant admits the actions underlying the claim thereby reducing the risk of staleness, the question of whether there is wrongful concealment capable of tolling the statute of limitations cannot be resolved by summary judgment. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). Here wrongful concealment by means of mental impairment due to hypnosis is avowed by plaintiff and supported by the affidavit of her treating physician, Dr. Ritland. Arizona provides for the tolling of the statute of limitations during periods of minority, imprisonment or insanity. A.R.S. § 12–502. The statute is based on a public policy that it would be inequitable to hold persons under such disabilities to strict time limitations for filing legitimate claims. That same policy stands behind the delayed discovery rule and dictates our resolution of the statute of limitations issue in favor of the plaintiff in this case.

## A. *Ulibarri's Affidavit*
### 1. Content

■ The defendant challenges the plaintiff's affidavit, stating that it contains opinion testimony that she is not qualified to give. The only paragraphs of the plaintiff's affidavit that relate directly to the statute of limitations issue are numbers five, six and nine. Paragraphs five and six lay the groundwork, providing some evidence that she actually did not remember the facts underlying her cause of action until some time in 1989. Paragraph nine is the only one that alleges the defendant actively concealed the cause of action:

That as a result of post hypnotic suggestions by DEAN GERSTENBERGER, not to recall the various sexual acts, your affiant did not remember the same until in or about February of 1990.[7]

The defendant argues that this paragraph sets forth an opinion for which the plaintiff has failed to establish her expertise. A generous reading of that paragraph presents some evidence for the factual predicate of her tolling argument. Leaving aside the opinion, the above paragraph could be recast to read: "Dr. Gerstenberger, while hypnotizing me, made suggestions that I would not remember what occurred during the sessions." This is evidence that sets the predicate for her tolling argument, creating a question of fact to be tried. In ruling on a motion for summary judgment the trial court will generally consider "facts" as "admissible in evidence" when set forth in an affidavit. *Mecham,* 173 Ariz. at 478, 844 P.2d at 645.

### 2. Admissibility of Post–Hypnotic Testimony

■ The defendant asserts that the plaintiff's affidavit established the inadmissibility of her testimony under *Lemieux v. Superior Court,* 132 Ariz. 214, 644 P.2d 1300 (1982), and *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (1982).

The Arizona Supreme Court, in *Collins, Lemieux* and their progeny, placed limits on testimony that is the result of hypnotically-induced recall. In the first opinion in *State ex rel. Collins v. Superior Court, (Collins I ),* the court held that a witness who has undergone hypnosis in reference to her trial testimony may not testify in a criminal trial. 132 Ariz. at 183–189, 644 P.2d at 1269–1275. In its supplemental opinion the court retreated from this position and allowed, under tight controls, the witness to testify to events recalled prior to being hypnotized. *See Collins II,* 132 Ariz. at 209, 644 P.2d at 1295. (The controls are discussed below.)

In *Lemieux,* the court applied *Collins* to civil cases. 132 Ariz. at 217, 644 P.2d at 1303. Like *Collins,* there are two opinions in *Lemieux:* the first imposing a total ban on the testimony of a person who has been hypnotized in reference to her testimony, the second allowing her to testify as to events she recalled independently of the hypnosis.

---

7. In paragraphs five and six, Ulibarri crossed out "1990" and wrote in "1989." She left the "1990" intact in paragraph nine.

The hypnosis to which the plaintiff refers in her affidavit is Gerstenberger's; there is no indication there that she was hypnotized by anyone else. Thus, the defendant's argument appears to have been that plaintiff is precluded from testifying about defendant's hypnosis of her by the very fact that he hypnotized her in 1983 and 1984. That argument has no merit. There is nothing *on the face of the plaintiff's affidavit* indicating that hypnotism was used to refresh her recollection of the prior events. Her affidavit merely sets forth her having been hypnotized by the defendant; it does not say that her memory of being hypnotized by him has been subjected to hypnosis. Thus, *Lemieux* would have no application to it. This situation is distinguishable because the hypnosis was induced by the defendant. To hold that defendant's hypnosis of plaintiff rendered her incompetent to testify would place all patients undergoing hypnosis at risk as subject to the whim or misdeeds of the hypnotist without legal recourse.

■ However, the plaintiff's attorney admitted at oral argument before the trial court that her memory had been hypnotically enhanced:

> ... I thought it was clear in the affidavit my client has two separate recollections, that's why she went to Dr. Ritland. She has her own independent recollection of certain events, then she went to Dr. Ritland, she was rehypnotized to obtain this post-hypnotic recall. You can hypnotize somebody and they can have more recall.
>
> These both occurred in 1989 where she started to have a recollection, so we have that intertwined and I think that was clear where she said she recalled and that the recollection is a combination of both independent and as a result of being put back under hypnosis and bringing out the post-hypnotic suggestions to forget what has gone on.

Plaintiff's counsel again admits to this memory enhancement in the reply brief. Although he asserts that there is no *evidence* of this fact, his statements can be used as evidence of the fact. *See Brenteson Wholesale, Inc. v. Arizona Public Service Co.*, 166 Ariz. 519, 803 P.2d 930 (App.1990) ("statements in a pleading are admissible against party making them as proof of facts admitted therein"); *Copeland v. City of Yuma*, 160 Ariz. 307, 310, 772 P.2d 1160, 1163 (App.1989) (opening statement at first trial was admissible in second trial). The plaintiff herself, then, has laid the groundwork for the potential exclusion of her own testimony. However, this issue was not directly ruled upon by the trial court.

■ The fact that a witness's memory concerning the event to which she proposes to testify was hypnotically enhanced does not absolutely preclude her from testifying. However, the witness may only testify as to events that she remembered prior to hypnosis. In order for that testimony to be admitted, the party offering it must do the following:

> Before hypnotizing a potential witness for investigatory purposes, the party intending to offer the prehypnotic recall must appropriately record by written statement, tape recording or preferably video-tape form the substance of the witness' knowledge and recollection about the evidence in question so that the prehypnotic recall may be shown. This must be preserved so that at trial the testimony of that witness can be limited to the prehypnotic recall. If such steps are not taken, admission of the prehypnotic recall will be error, requiring reversal if prejudicial.... Finally a party intending to offer testimony of a witness who has been hypnotized must make a timely disclosure of such information to the court and to opposing counsel.

*Lemieux*, 132 Ariz. at 217–218, 644 P.2d at 1303–1304.

The plaintiff claims that she has both independent and hypnotically enhanced memories concerning the defendant's conduct. There is no indication in the record as to what parts of her affidavit fall into which category. Most importantly, the court cannot discern if her memory of the defendant's post-hypnotic suggestions was hypnotically induced. The Arizona Supreme Court has recently reemphasized that, if the witness has been subjected to hypnosis on the matter at hand, there *must* be a record of prehypnotic recall, or the witness is tainted.

However, the very premise of *Collins II* is that it is difficult, if not impossible, to ascertain exactly which testimony or recall has been influenced by the state of suggestability [sic] induced by hypnosis. We adhere to our holding in *Collins II* that post-hypnotic testimony must have been demonstrably recalled and recorded prior to hypnosis in order to be admissible.

*State ex rel. Neely v. Sherrill,* 165 Ariz. 508, 513, 799 P.2d 849, 855 (1990).[8]

The plaintiff's affidavit raises a factual issue as to whether hypnosis prevented her from timely discovering and filing her claim. On remand she has the burden of affirmatively establishing her competence to testify at trial as to the matters in her affidavit. Ariz.R.Civ.P. 56(e).

**B. *Dr. Ritland's Affidavit***

 Having determined that the plaintiff's own testimony derived from her affidavit presents a triable issue as to whether she was unaware of her injuries because the defendant hypnotically concealed the cause of action, we consider whether there must also be expert testimony on hypnosis to support plaintiff's argument. The issue of concealment is raised only through the allegation of hypnotic mind control. We do not believe this to be an area within the general knowledge of the average juror.[9] Consequently, expert testimony is necessary to establish the basis for this sort of concealment.[10] The plaintiff attempted to provide that expert testimony with Dr. Ritland's affidavit. The trial court ruled generally that she had failed to refute that the action was barred by the statute of limitations. The defendant on appeal claims that she failed to qualify Dr. Ritland as an expert in hypnosis.

 The affidavit of John Ritland, M.D., a medical doctor practicing in obstetrics and gynecology, purports to be an expert medical affidavit on the plaintiff's experience with the defendant's hypnosis. The defendant claims that it fails to establish that Dr. Ritland has the necessary expertise to render an opinion on hypnosis. The first paragraph of the affidavit states simply that Dr. Ritland is an obstetrician/gynecologist and "is a [sic] expert in hypnosis." To qualify a witness as a medical expert, the proponent must establish the witness's knowledge and familiarity with the standard of care commonly practiced by physicians in that specialty. *Kronke v. Danielson,* 108 Ariz. 400, 499 P.2d 156 (1972) (medical malpractice case involving a specialist). We must ask whether the fact that Dr. Ritland is a medical doctor specializing as an obstetrician/gynecologist, *ipso facto*, establishes his expertise in hypnosis. The defendant, in his response to the motion to vacate complained that Dr. Ritland's affidavit contained no explanation of the basis of his expertise. This, again, is an issue never directly ruled upon by the trial court. Whether a witness is competent to testify as an expert is a matter primarily for the trial court and largely within its discretion. *State v. Salazar,* 173 Ariz. 399, 844 P.2d 566 (1992).

 If a party fails to lay adequate foundation for an expert's affidavit in response to a motion for summary judgment, that testimony is not considered. *See Chess v. Pima County,* 126 Ariz. 233, 235, 613 P.2d

---

8. *Collins* and *Lemieux* both speak in terms of investigatory hypnosis. It is unclear whether Dr. Ritland's hypnotizing of the plaintiff was investigatory, therapeutic, or some combination of the two. So far, there are no Arizona cases involving anything but investigatory hypnosis.

9. Hypnosis and its effect on the reliability of a witness's recall and testimony is fraught with technical/scientific principles. *See, generally, State ex rel. Neely v. Sherrill,* 165 Ariz. 508, 799 P.2d 849; *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266; *Lemieux v. Superior Court,* 132 Ariz. 214, 644 P.2d 1300; Deborah F. Harris, Annotation: *Necessity and Admissibility, in Federal Trial, of Expert or Opinion Testimony Regarding Use or Reliability of Hypnotically Refreshed Recollections,* 50 A.L.R. Fed. 602 (1980). It seems that a jury of lay persons could not be expected to understand it without expert help. *Cf., Bell v. Maricopa Medical Center,* 157 Ariz. 192, 195 n. 1 (App.1988) (expert testimony necessary for medical malpractice unless the negligence is so gross as to be apparent to a lay person).

10. The parties did not specifically address the legal issue of the necessity of expert testimony. The defendant merely challenged the plaintiff to come up with it, and the plaintiff appears to have tacitly conceded its necessity.

1289, 1291 (App.1980) (affidavit was insufficient for summary judgment purposes because "it contain[ed] conclusions and fail[ed] to show that the affiant [was] competent to testify to the matters stated therein"); *National Housing Indus. v. E.L. Jones Dev. Co.*, 118 Ariz. 374, 576 P.2d 1374 (App.1978) (witness not shown to be expert; proper foundation not laid for expert testimony). A witness may be qualified as an expert on the basis of knowledge, experience, training or education. *State v. Saez*, 173 Ariz. 624, 845 P.2d 1119 (App.1992). A claim that insufficient foundation was laid for the admission of evidence cannot be raised on appeal unless the claim was specifically pointed out to the trial court regarding the alleged defect in the foundation. *State v. Guerrero*, 173 Ariz. 169, 840 P.2d 1034, 1036 (App.1992).

Dr. Ritland's affidavit states that he is a medical doctor specializing in obstetrics and gynecology *and that he is an expert in hypnosis.* These avowals are not controverted in the sense that no one denies that he is a medical doctor and no ones denies that he is a specialist in obstetrics and gynecology. No one denies that he treated the plaintiff. Yet these avowals are no more substantiated in the affidavit than is the avowal that he is an expert in hypnosis. The defendant asks the court to accept his own avowal that he is a medical doctor and that he specializes in psychiatry with no further substantiating facts. He also avows, acting as his own expert, that he did not provide plaintiff with any treatment which would interfere or prohibit "her from understanding, recognizing or remembering any relationship or activities" that she had with him. Defendant does not admit or deny the act of hypnotizing the plaintiff. Dr. Ritland disputes the defendant's affidavit by his own, which states that defendant caused plaintiff not to remember his acts or to recognize her injuries and that he did so by hypnosis. Since Dr. Ritland is an undisputed medical expert and an avowed expert in hypnosis, we believe a material fact issue is raised that cannot be resolved by summary judgment. However, on remand, the trial court may determine Dr. Ritland's

competency to testify as an expert in hypnosis.

We hold that the plaintiff has raised a material fact issue as to whether she could have discovered the existence of her cause of action within the statutory time period. *Roberts v. Morgensen Motors*, 135 Ariz. 162, 659 P.2d 1307 (App.1982). The factual issue has been raised with regard to concealment. The wrongful concealment sufficient to toll a statute of limitations requires a positive act by the defendant taken for the purpose of preventing detection of the cause of action. *Cooney v. Phoenix Newspapers*, 160 Ariz. at 141, 770 P.2d at 1187; *Jackson v. American Credit Bureau, Inc.*, 23 Ariz.App. 199, 531 P.2d 932 (1975). Here the concealment relates to an alleged positive act by the defendant of hypnotizing the plaintiff to obtain the delay of which he actively seeks to take advantage by pleading the statute of limitations bar to plaintiff's cause of action. Whether this concealment occurred and was sufficient to toll the statute of limitations is a factual dispute to be resolved by the fact finder. *Pritchard v. State*, 163 Ariz. 427, 788 P.2d 1178 (1990).

## III. MOTION TO VACATE

Having determined that the plaintiff adequately refuted the motion for summary judgment, we find that the trial court abused its discretion in not finding excusable neglect for her late response to the motion. The plaintiff argued that her failure to respond to the motion for summary judgment was the result of excusable neglect and that she should either have a new trial under Rule 59(a) or relief from the judgment under Rule 60(c)(1) and (6).[11] We conclude that the facts establish that relief should have been granted under Rule 60(c)(1). ("Mistake, inadvertence, surprise or excusable neglect.") We further note that plaintiff's failure to file a timely response to a motion for summary judgment does not require the trial court to rule in favor of the defendant. *United Bank*

11. Neither party addresses the differences in application between Rules 59(a) and 60(c) and the

differences between 60(c)(1) and 60(c)(6).

*v. Allyn,* 167 Ariz. 191, 805 P.2d 1012 (App. 1990).

■ In the battle over the motion to vacate, the attorneys argued whether the plaintiff's attorney, Van Baalen, had in fact received the motion for summary judgment soon after it was filed on October 17, 1990, and was only goaded into action after the call from the judge's office. The filed motion bore a mailing certificate which indicated that it was mailed to Van Baalen on October 16. A strong presumption of receipt arises upon proof of proper mailing. *State v. Baca,* 172 Ariz. 1, 832 P.2d 933 (App.1992). The court did not make any findings of fact but a close reading of its minute entry indicates that the court assumed Van Baalen did not receive a copy of the motion until November 28 as avowed in Van Baalen's affidavit and the affidavits of his office staff. The court's ruling was based on Van Baalen's failure to quickly remedy the situation.

The Court expresses particular concern regarding plaintiffs' failure to file any responsive or other pleading with the Court during the week following his secretary's telephone call on November 21, 1990, but does note that the Court's file contains a copy of a letter dated November 27, 1990—received by the Court November 28, 1990—addressed to Mr. Kline from Mr. Van Baalen, requesting a copy of the Motion for Summary Judgment.

The defendant's arguments proceed from the assumption that Van Baalen's office should have recognized the situation as a dire emergency, dire enough for the secretary to track Van Baalen down in Las Vegas, dire enough for Van Baalen to scramble when he finally learned of the motion on Monday, November 26. The trial court appears to have been of the opinion that Van Baalen did not take adequate steps to remedy an emergency situation. The problem with this scenario is that there is little in the record to indicate that Van Baalen should have recognized the emergency until it was too late.

The record does not indicate that, when "Jean" of Judge Anderson's office called Van Baalen's secretary, she told her that the plaintiff's response to the motion was already overdue. From the record, it appears that Van Baalen did not learn it was overdue until Wednesday, November 28, when he finally received a copy. Unfortunately, the judge granted the motion the same day. The court was concerned that Van Baalen did nothing for a week, but the record does not establish that Van Baalen knew or should have known that he was already late with his response.

On the other hand, there are problems with Van Baalen's handling of the matter. We might assume that the trial court does not *routinely* call the attorney to see if he intends to respond to a motion, and thus Van Baalen's secretary should have realized that there was a deadline problem when the judge's office called. The secretary might have called her counterpart at defense counsel's firm immediately after receiving the call from the judge's chambers on Wednesday, November 21. Van Baalen might have immediately talked with defense counsel when he returned on Monday the 26th. Van Baalen might have called the judge's office immediately upon receiving the motion on the 28th, when he would have certainly learned that the response date had long since passed. In short, it does not appear that Van Baalen was vigilant.

■ Carelessness does not equate with excusable neglect. *Almarez v. Superior Court,* 146 Ariz. 189, 704 P.2d 880 (App.1985). However, Rule 60(c) does not require extraordinary vigilance as inadvertence is a ground for relief under Rule 60(c)(1). *Coconino Pulp & Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957). Neglect is excusable when it is such as might be the act of a reasonably prudent person in the same circumstances. *Walker v. Kendig,* 107 Ariz. 510, 489 P.2d 849 (1971).

In the context of an attorney's action or inaction, the Arizona cases have found excusable neglect where the attorney had established and was utilizing office procedures designed to ensure a timely response, but was "deflected from this purpose by one of the many interruptions that beset practitioners in modern law practice," *Addison v. Cienega, Ltd.,* 146 Ariz. 322, 705 P.2d 1373 (2 CA–CIV 5295, filed May 9, 1985), or where "the mistake or neglect ... was the type of clerical error

**164**

which might be made by a reasonably prudent person who attempted to handle the matter in a prompt and diligent fashion." *City of Phoenix v. Geyler, supra,* 144 Ariz. [323] at 332, 697 P.2d [1073] at 1082 [ (1985) ].

*Almarez,* 146 Ariz. at 192, 704 P.2d at 833. We conclude that the trial court abused its discretion in not excusing Van Baalen's conduct which does not seem unreasonable under these facts. *See Coconino Pulp,* 83 Ariz. 117, 317 P.2d 550; *Campbell v. Frazer Const. Co.,* 105 Ariz. 40, 459 P.2d 300 (1969) (the trial court did not abuse its discretion in setting aside default: because experienced businessman misread summons, he believed he had 30 days to answer, not 20; he consulted with his attorney within the time he believed he had to file answer; his motion to set aside default was made 7 days after entry of default); *Goodman's Markets, Inc. v. Ward,* 4 Ariz.App. 456, 421 P.2d 538 (1966) (it was abuse of discretion to refuse to set aside default where plaintiff's attorney continued to negotiate with defendant's representatives, who appeared to be unaware of plaintiff's revocation of open extension; plaintiff's counsel did not mention letter of revocation in settlement discussions and alleged letter of revocation mostly concerned another case). The plaintiff was vigorously prosecuting this case and would be substantially prejudiced by the trial court's failure to find excusable neglect or inadvertence under these facts. *M & M Auto Storage Pool v. Chem. Waste,* 164 Ariz. 139, 142, 791 P.2d 665, 668 (App. 1990).

There is a presumption in favor of hearing a case on the merits. *Almarez,* 146 Ariz. at 191, 704 P.2d at 832. In ruling on a Rule 60(c) motion, the exercise of the court's discretion must be supported by facts or sound legal policy. *Id., citing City of Phoenix v. Geyler,* 144 Ariz. 323, 329, 697 P.2d 1073, 1079 (1985). The Arizona Supreme Court has defined judicial discretion thus:

> "Discretion" of court is a liberty or privilege allowed to a judge, within the confines of right and justice, to decide an act in accordance with what is fair, equitable, and wholesome, as determined by the peculiar circumstances of the case, and as discerned by his personal wisdom and experience, guided by the spirit, principles, and analogies of the law, to be exercised in accordance with a wise, as distinguished from a mere arbitrary, use of power, and under the law. *Re Welisch,* 18 Ariz. 517, at 521–522, 163 P. 264, at 265–266 (1917).

*Walker,* 107 Ariz. at 513, 489 P.2d at 852. Refusing to set aside the judgment in these circumstances is harsh, rather than fair and equitable. In such a case, the appellate court can "look over the shoulder" of the trial court and appropriately substitute its judgment for that of the trial court. *State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). When the record reveals circumstances that this court believes warrants relief, we can overturn the trial court's discretionary ruling. *Gorman v. City of Phoenix,* 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987). We believe that the acts of plaintiff's attorney constituted excusable neglect or inadvertence justifying relief under Rule 60(c)(1).

**CONCLUSION**

For the reasons set forth in this opinion, we reverse the summary judgment entered by the trial court and remand the case for further proceedings not inconsistent with this opinion.

CONTRERAS and CLABORNE, JJ., concur.