NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO M.D.

No. 1 CA-JV 23-0146
FILED 3-21-2024

Appeal from the Superior Court in Maricopa County
No. JD41348
The Honorable Michael Rassas, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant Michael D.*

Arizona Attorney General's Office, Tucson
By Ken Sanders
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee M.D.*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

¶1 Michael D. ("Father") appeals the superior court's order terminating his parental rights and the denial of his motion to set aside that order. Because Father shows no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Father and Sarah J. ("Mother") are the natural parents of Child, born September 2021. Shortly after birth while still in the hospital, Child suffered withdrawal symptoms and tested positive for methamphetamines and fentanyl. Mother admitted to the Department of Child Safety ("DCS") that she and Father used drugs during the pregnancy. Father disputed that claim, but refused urinalysis drug testing. He also displayed "bizarre behaviors" at the hospital, prompting hospital staff to suspect drug use.

¶3 Child remained hospitalized for five weeks to be treated for the withdrawal symptoms. Father never visited the hospital during that period, and he did not maintain contact with DCS. After Child was discharged from the hospital, DCS took Child into custody and filed a dependency petition.

¶4 The superior court adjudicated Child dependent in April 2022, and ordered the parties to work toward family reunification, specifically ordering that Father's reunification work address substance abuse. For the next nine months, Father disregarded reunification services, failed to keep in contact with DCS, and failed to consistently visit Child. Between June and August 2022, Father submitted to less than half of his required drug tests, and when he tested, he tested positive for THC, fentanyl and methadone.

¶5 In February 2023, DCS moved to terminate Father's parental rights. Father failed to appear at the first two hearings. He finally appeared at a status conference in April 2023 and denied DCS's allegations. During that conference, the juvenile court scheduled a contested termination

hearing for May 2023. The court specified that the hearing would be held in person, told Father he must attend, and advised Father that the court would proceed in his absence. Father also received written notice of the termination hearing and the consequences of not attending.

**¶6** Father did not appear at the May 2 termination hearing, but his counsel did. His counsel told the juvenile court her last contact with him was a "couple weeks" earlier, she had been unable to reach him that day and she had "no good cause for his failure to appear." Therefore, the juvenile court found Father had failed to appear without good cause and proceeded in his absence. The court then terminated Father's parental rights in July 2023. Father appealed.

**¶7** Five days after his notice of appeal, Father filed a motion for reconsideration in the juvenile court, arguing he had good cause for his failure to appear and had a meritorious defense to the termination action. This court stayed Father's appeal and revested jurisdiction in the juvenile court to consider Father's motion, which the court denied.

**¶8** Father timely appealed. We have jurisdiction. A.R.S. §§ 8-235, 12-120.21, and -2101(A)(1).

## DISCUSSION

**¶9** Father argues the juvenile court erred by finding he lacked good cause for his failure to appear. We review that finding for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007). We reverse only if the juvenile court's decision was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83, ¶ 19 (App. 2005) (citation omitted).

**¶10** Absent good cause, failure to appear at a termination adjudication hearing "may result in a finding that the party has waived legal rights." Ariz. R.P. Juv. Ct. 351(c)(2)(A). A finding of waiver may be set aside if a parent shows a meritorious defense and good cause for failing to appear. *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 89, ¶ 19 (2019). To establish good cause, the parent must show "mistake, inadvertence, surprise or excusable neglect." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007). Excusable neglect exists when "a reasonably prudent person" would do the same "in the same circumstances." *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993).

**¶11** Father argues he had good cause for his failure to appear because he was driving from Lake Havasu City to Phoenix during the hearing and did not have cell service. But Father did not provide any justification for why he was traveling at that time. He was told about the hearing both orally and in writing, along with the consequences of not appearing. A reasonably prudent parent facing the termination of his parental rights would not be traveling in a remote area of the desert with those rights in the balance. The juvenile court did not abuse its discretion by finding Father lacked good cause for his failure to appear.

**¶12** Because Father has not shown good cause for his absence, we do not address the merits of his argument.

## CONCLUSION

**¶13** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA