942 P.2d 451

**MOHAVE ELECTRIC COOPERATIVE, INC., an Arizona corporation, Plaintiff–Appellant,**

v.

**Susan H. BYERS, Defendant–Appellee.**

**No. 1 CA–CV 96–0073.**

Court of Appeals of Arizona, Division 1, Department C.

May 15, 1997.

294

Ulrich, Kessler & Anger, P.C. by Paul G. Ulrich, Donn G. Kessler, William H. Anger, Phoenix, and Roshka, Heyman & DeWulf, P.L.C. by Raymond S. Heyman, Phoenix, for Plaintiff–Appellant.

John A. Baade, Tucson, for Defendant–Appellee.

## OPINION

GRANT, Judge.

This appeal brought by Mohave Electric Cooperative ("Mohave") concerns an action to recover damages caused by the alleged unlawful conduct of Alvin H. Carpenter ("Carpenter") and Susan H. Byers ("Byers"). Carpenter and Byers were Mohave's former general manager and assistant general manager, respectively.

Prior to trial, Carpenter died and his estate settled with Mohave for a substantial amount of damages. The trial court entered partial summary judgment against Mohave precluding Mohave from introducing evidence of Byers's misconduct and of her joint and several liability.

The trial court also issued four rulings which effectively eviscerated most of Mohave's claims against Byers prior to trial. The court subsequently found Byers guilty of fraud, awarding a very small percentage of Mohave's claimed damages. The court then ruled that Byers was the prevailing party and awarded her attorney's fees.[1]

For the reasons set forth below, we reverse the trial court's award of partial summary judgment to Byers and we remand this case for a trial on the merits. We therefore vacate the trial court's judgment awarding Byers attorney's fees.

## PROCEDURAL HISTORY AND FACTS

### I. Procedural History

Mohave is a member-owned, non-profit cooperative located in Bullhead City, Arizona, which provides electrical power to its members/consumers. This case involves Mohave's claims of fraud, negligence, breach of fiduciary duties and contract, embezzlement, forgery, unjust enrichment, and racketeering. Mohave seeks damages caused by the allegedly unlawful conduct of Carpenter and Byers.

Mohave filed its Complaint against Byers and Carpenter on December 23, 1991. Carpenter died prior to trial, and both Carpen-

ter's estate and the defendants in a related separate action (Mohave's previous accountants) settled with Mohave, collectively paying Mohave more than $500,000.

This appeal centers on four rulings by the trial court which Mohave maintains were erroneous. The first two rulings related to Byers's Motion for Summary Judgment. On March 1, 1995, the trial court granted Byers partial summary judgment dismissing Mohave's claims based on 1,157 packets of credit card and expense transactions which were developed during an audit of Mohave, and finding that Byers was not jointly and severally liable for most of Carpenter's misdeeds. In so holding, the trial court ignored Mohave's claims against Byers for her independent negligence and breach of her fiduciary duties. In that ruling, the trial court also held that Mohave failed to present specific evidence on 1,157 of 1,200 separate acts of fraudulent expenses which had been evaluated in an audit of Mohave. The latter ruling ignored that Mohave had presented an auditing expert's report concerning the 1,200 credit card and expense transactions. The order granting partial summary judgment to Byers reduced Mohave's claims from $368,000, before trebling for racketeering, to less than $50,000, consisting primarily of the remaining expense transactions. Mohave also contests the trial court's order granting Byers's Motion to Dismiss claims based on most of the remaining 43 credit card and expense transactions.

On May 17, 1995, following a bench trial, the trial court granted Byers's Motion for Dismissal pursuant to Rule 41(b) of the Arizona Rules of Civil Procedure, dismissing most of Mohave's remaining claims based on the Statute of Limitations. In that ruling, the trial court found Byers guilty of fraud in the amount of $1,943.68. Mohave maintains the trial court erred in issuing that order because the court ignored Mohave's evidence that Byers and Carpenter wrongfully concealed their misconduct from Mohave. Mohave also maintains that the court misapplied

---

1. Because Byers was represented by a sole practitioner, we use the singular possessive of attorney's fees throughout this opinion.

the law pertaining to fraudulent concealment tolling the Statute of Limitations. That ruling left less than $2,000 in damages.

On August 16, 1995, following a bench trial, the trial court entered a judgment for $1,943.68 against Byers on Mohave's claims for fraud and breach of fiduciary duty, but found for Byers on the remaining claims. Despite that judgment, the trial court found that Byers was the prevailing party and awarded her more than $100,000 in attorney's fees and costs.

On August 31, 1995, Mohave filed a Motion for New Trial and to Vacate the Judgment (Motion for New Trial), and a Motion to Alter or Amend the Judgment. The trial court issued an amended judgment denying those motions, reducing the judgment against Byers to $615.25 (again based on the Statute of Limitations), and awarding Byers additional attorney's fees.

Mohave filed a timely Notice of Appeal from both the August 16, 1995 judgment and the amended judgment. This court has jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") sections 12–2101(B), 12–2101(C), 12–2101(F)(1) and 12–120.21(A).

## II. Pertinent Facts

The majority of Mohave's claims and damages were dismissed by the trial court on summary judgment. On appeal of that order, the evidence is viewed in the light most favorable to Mohave. *AROK Constr. Co. v. Indian Constr. Servs.*, 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993).

### A. Mohave's Corporate Structure and Byers's Employment with Mohave

Mohave is an Arizona non-profit cooperative governed by an elected board of directors ("the board"). Carpenter, who was Mohave's general manager for 18 years, from 1972 to late 1990, ran the cooperative on a daily basis. The evidence at trial established that Carpenter operated Mohave as if it were his own business and he controlled, or at a minimum, strongly influenced, the board. Carpenter formally retired on January 31, 1991. The evidence established that the policies of the board provided: (1) that Carpenter was selected by, reported to, and was overseen by, the board; (2) that Carpenter was authorized to "interpret policy, exercise judgment, establish a supervisory organization, determine administrative and operating procedures and execute them by delegating functional activities to subordinates"; and (3) that Carpenter had "wide latitude in the selection and management of personnel and the termination of the services of personnel," and that he was responsible for "the proper maintenance of accounting records."

In October 1986, Carpenter created the position of assistant general manager and appointed Byers to that position. She remained in that position until March 1991. Byers had very little experience to qualify her for such a position. She had previously worked for Mohave as a meter reader and secretary. She only had a high school diploma and had graduated from beauty school. It is uncontested that Byers and Carpenter had a personal romantic relationship. Byers admitted in her responses to requests for admission that she had authority to sign on Carpenter's personal bank account, and that she and Carpenter dined, socialized and went on vacation together. Mohave County records document that Carpenter and Byers had purchased a home together as joint tenants with right of survivorship.

Mohave asserts a conspiracy claim against Byers, maintaining that the close relationship between Carpenter and Byers motivated Carpenter to appoint Byers as the assistant manager and enabled Carpenter and Byers to collaborate to defraud Mohave. Mohave also maintains that Carpenter and Byers paid for much of their relationship with Mohave credit cards and funds.

During her tenure as assistant general manager, Byers directly reported to Carpenter. In her deposition, Byers testified that as assistant general manager she supervised department heads, including the heads of the accounting and finance departments, called meetings with those department heads, and also reported directly to the board. She and others testified that during Carpenter's rather frequent absences, Byers operated Mohave on a daily basis.

Mohave presented evidence that Mohave had written policies requiring the general manager to: (1) provide general oversight, care, and management of the company's assets; (2) exercise control over accounting procedures and records; and (3) comply with all laws. Mohave also presented evidence that Byers had a duty to comply with those written policies, both when she performed her duties as assistant general manager and when she served as acting general manager during Carpenter's significant absences.

Mohave alleges that from at least 1986, when Byers became assistant general manager of Mohave, Carpenter and Byers filed false credit card charges and expense vouchers with Mohave, converted Mohave's funds and equipment for their personal use, and mismanaged Mohave to benefit both themselves and their families and friends.

As assistant general manager, Byers was issued credit cards to use for business-related expenses, including meals and travel. She could obtain cash advances and reimbursement for out-of-pocket business expenses by submitting expense vouchers. The requirement to submit vouchers for reimbursement for business expenses applied to other company employees. Periodically, Byers submitted receipts for reimbursement. Byers and other employees, including Carpenter, submitted credit card receipts and vouchers to Monika Colby, head of Mohave's accounting department.

### B. The MMI Audit

The key document in this case is an investigative audit completed on August 31, 1992, by Murphy & Maconachy, Inc., a certified public accounting and management consulting firm specializing in white collar criminal investigations. When Mohave appointed a new general manager to replace Carpenter in late 1990, Mohave's members requested a financial audit ("the initial audit") so that the new general manager could begin his term with a "clean set of books." In April 1991, the members of Mohave voted for an exhaustive financial investigative audit ("MMI audit") to determine the legality of all expenditures because the initial audit uncovered some improprieties that the auditors believed could be used as a basis to file a fidelity insurance claim. The MMI audit culminated in an audit report which Mohave used to document its insurance claim.

The MMI audit discussed the personal relationship between Byers and Carpenter, their extensive misconduct and their concealment of that misconduct. The MMI audit reported that the financial investigation was hampered because Byers oversaw the destruction of more than two large dumpsters of Mohave's financial documents during 1990. Byers admitted in her deposition that in 1990, she oversaw the destruction of the financial records. Mohave maintains that she destroyed those documents to conceal her financial misconduct; whereas Byers maintains the documents were destroyed in compliance with Mohave's record retention policies. However, Byers admits that Mohave had never destroyed any records until 1990, after the initial audit commenced.

Despite Byers's destruction of some of Mohave's financial documents, the MMI audit revealed several acts of misconduct by Byers and Carpenter: (1) wrongful use of Mohave's credit cards for personal expenses, including restaurants, hotel stays, travel, jewelry, candy and underwear; (2) intentional filing of false or incomplete expense reports; (3) the acquisition of cash advances to obtain double recovery for such expenses, or to pay for other personal expenses; (4) providing assistance to certain customers in the construction of power lines, thereby violating Mohave's policies and regulations; (5) the conversion of insurance policies on Byers and Carpenter's lives, and the forgery of names and the misleading of the board to convert such policies; (6) use of Mohave's funds to purchase vehicles and equipment for Carpenter's friends, and for Byers's father; and (7) use of Mohave personnel and equipment both during business hours and for personal tasks at Byers and Carpenter's homes.

Using financial records which Byers did not destroy, the MMI audit reconstructed 1,200 packets of credit card charges and expense vouchers ("the packets") filed by Byers and/or Carpenter. The MMI audit compared those packets with Byers and Carpenter's

calendars and with other documents, and could find no business purpose for transactions evidenced by the 1,200 packets. The packets amounted to more than $71,000 in fraudulent use of credit cards, more than $45,000 in unsupported and improper expense advances, and more than $34,000 in falsified expense reports. Many of the expenses were incurred by Byers and Carpenter on trips and for dinners.

The audit also revealed that on at least 23 occasions, Carpenter charged an expense on a Mohave credit card and Byers then submitted a receipt for the same expense to obtain a separate reimbursement from Mohave. The audit also revealed that in 1989, Byers and Carpenter purchased a water truck and backhoe using Mohave funds. Both during her deposition, and in her answers to interrogatories, Byers admitted asking Carpenter to buy a water truck for her father with Mohave funds. Byers signed the Mohave check in the amount of $10,022.50 for that purchase. Byers and Carpenter immediately sold the truck and another Mohave backhoe to Byers's father for $9,358.89. While Byers's father reimbursed Mohave for most of the expenses incurred by Mohave in acquiring the truck and backhoe, the MMI audit concluded that Mohave had regularly used that backhoe and that Mohave incurred unreimbursed expenses because Mohave had recently repaired the backhoe which was sold to Byers's father. The audit also concluded that the used backhoe Byers purchased for Mohave with Mohave funds as a replacement was of little value to Mohave.

At trial, Mr. Maconachy, an expert witness who conducted the MMI audit, testified that, as Mohave's second highest ranking employee, Byers had a fiduciary duty to correct and report any improper employee conduct, including Carpenter's. Based upon his audit, Maconachy testified at his deposition that Byers and Carpenter appeared to be in collusion with each other, and that, if Byers had performed her duty to discover and report both her own and Carpenter's defalcations, Mohave would not have incurred all the damages it sustained. The expert's opinion that there was collusion is supported not only by Byers and Carpenter's fraudulent use of credit cards, charges for personal trips and dinners, and purchases of the water truck and backhoe, but also by the fact that Byers repeatedly submitted false expense reports to Mohave for reimbursement for items which Carpenter had charged on Mohave's credit cards. The MMI audit also concluded that Mohave did not discover Byers and Carpenter's misconduct earlier because for approximately ten years Mohave's annual certified financial audits were done by a Texas accounting firm which Carpenter had recommended to the board. The MMI audit also found that Mohave's former accountants may have been negligent in not properly examining Mohave's equipment purchases, expense reports and credit card expenses. Finally, the MMI audit confirmed that Byers may have concealed her misconduct even after the audit began by intentionally ordering at least two dumpsters full of financial documents to be destroyed.

### C. Mohave's Claims Against Byers

Based upon the MMI audit, Mohave brought this action against Byers and Carpenter in December 1991. Mohave maintains that the total damages it incurred due to the misconduct are estimated to be $368,-627.96, before trebling for racketeering, and not including either the cost of the MMI audit itself, or Mohave's attorneys' fees and costs. Mohave claimed that Byers was jointly and severally liable with Carpenter, and also that Byers breached her independent duty to uncover and to report Carpenter's misdeeds to the board. Mohave also brought a separate action against its former accountants.

### D. Evidence Presented by Mohave to Refute Byers's Motion for Summary Judgment

In moving for summary judgment, Byers contended that her failure to report expenses was excusable because Mohave did not have policies requiring such reporting, or alternatively, that if there were such policies, Mohave did not enforce them.

In its effort to survive summary judgment, Mohave presented evidence that Mohave had policies, although they were not written, and

that Mohave had periodically enforced those policies. Mohave presented evidence and testimony that: (1) Carpenter had specifically directed Monika Colby, Mohave's finance director, to require Byers and other employees to document expenses and charges; (2) Mohave never authorized Carpenter to charge his personal expenses to Mohave; (3) Mohave's written policies required Byers and Carpenter to comply with all laws, including the Internal Revenue Code's requirement that Mohave compile and retain documentation of all employees' business-related expenses; and (4) Mohave published forms for reimbursement and required its employees to complete such forms. Finally, Mohave introduced evidence that Byers occasionally filed expense reports.

Mohave also introduced other evidence developed during discovery. First, it introduced the MMI audit's finding that, on at least 23 occasions, Carpenter charged an expense on a Mohave credit card and also submitted a receipt for that same expense to Mohave to obtain a separate reimbursement. In her Answer to Mohave's Complaint, Byers admitted that she sometimes submitted incorrect receipts for expenses. In her answer to interrogatories, Byers admitted that she intentionally submitted false receipts for expenses, rather than failing to submit receipts. In her deposition, Byers also testified that it was better to file false reports than no reports at all. During her deposition, Byers also testified that in her opinion, any expense that she charged on her Mohave credit card was an appropriate business expense:

Q. It's your understanding that anything that was ever charged to the MEC (Mohave) credit card was an appropriate business expense.

A. That's correct.

During her deposition, Mohave presented Byers with a sampling of 43 packets of the 1,200 expense vouchers and credit card receipts. Those packets were used to demonstrate the different types of misappropriations committed by Byers and Carpenter against Mohave. In her deposition, Byers was also presented with her and Carpenter's calendars corresponding to the dates on the receipts in the 43 packets. She admitted that she could not see any business purpose for any of those expenses. For example, she admitted that in 1989, she and Carpenter took a vacation over the Labor Day weekend, and that she charged their hotel costs and other expenses to Mohave.

In her deposition, Byers also admitted that in 1988 she stayed in the same hotel room with Carpenter on a trip to Texas, and that Carpenter charged the expenses to Mohave. Byers claimed that Carpenter made the trip to meet with a manager of another electric cooperative. However, she acknowledged that she had no legitimate business purpose to join Carpenter.

*E. The Trial Court's Dismissal of Mohave's Claims, the Judgment for Mohave, the Denial of Mohave's Motion for New Trial and the Award of Byers's Attorney's Fees*

The trial court dismissed most of Mohave's claims for damages caused by the fraudulent credit card charges and expense vouchers. It also found that there was insufficient evidence to show Byers was jointly and severally liable for most of Carpenter's misconduct, thereby reducing Mohave's claims for compensatory damages from more than $360,000, before trebling for racketeering, to less than $50,000, consisting primarily of the expense transactions developed in the audit. By the time of trial, the amount of remaining compensatory damages against Byers was $6,410.15.

The trial court also granted Byers's Motion to Dismiss pursuant to Rule 41(b) of the Arizona Rules of Civil Procedure, ruling that most of Mohave's claims based on the remaining allegedly wrongful financial packets set forth in the 43 packets were precluded by the Statute of Limitations. Mohave maintains that ruling was erroneous because it ignored Byers and Carpenter's wrongful concealment of their misconduct, which should have tolled the Statute of Limitations until at least 1990, when the initial audit commenced, if not until 1991, when the MMI audit was conducted. That ruling further reduced the amount of compensatory damages to less than $2,000.

After a bench trial on Mohave's remaining claims of fraud, breach of fiduciary duty, negligence and for money had and received, the trial court found Byers liable for fraud in the amount of $1,943.68, which the court later reduced to $615.25, again based on the Statute of Limitations. Despite finding that Byers acted fraudulently, the trial court found that Byers was the prevailing party and awarded Byers attorney's fees of $100,936.02. The court denied Mohave's Motion for New Trial and Motion to Vacate the Judgment on all of the issues presented below.

## ISSUES

The following issues are presented in this appeal:

1. Did the trial court err in the summary judgment proceedings by refusing to consider the MMI audit report and the expert's testimony concerning the MMI audit as to the 1,157 transactions?

2. Did the trial court err in granting Byers partial summary judgment on the 1,157 fraudulent expense packets because Mohave did not submit specific evidence of Byers's fraud or of her breach of fiduciary duty as to each of the 1,200 packets, but instead relied upon expert testimony that the sampling of 43 packets showed Byers and Carpenter's pattern of fraud as to all 1,200 packets?

3. Did the trial court err in granting Byers partial summary judgment relating to all misconduct other than the 43 expense packets by (a) isolating each aspect of the conspiracy and then requiring specific evidence of a conspiratorial agreement as to each act of misconduct; (b) ignoring its own finding that there was sufficient evidence to show a conspiracy to defraud Mohave as to expenses; and (c) ignoring evidence as to Byers's negligence and her breach of her independent duty to uncover and report any such types of misconduct to the board?

4. Did the trial court err in finding that there were no genuine issues of fact concerning whether Byers was jointly liable pursuant to A.R.S. section 12-2506(D)(1) for Carpenter's fraudulent expense vouchers and charges, and whether Byers had breached her independent duty to uncover such misconduct and to report it to the board?

5. Did the trial court err in finding that Byers could not be liable for failure to document expenses solely because Mohave had no written policies on reimbursement procedures?

6. Did the trial court err in ruling that the Statute of Limitations barred claims based on most of the 43 fraudulent expense packets where there was evidence that until at least 1990 Carpenter and Byers fraudulently concealed their misconduct?

7. Did the trial court err in denying Mohave's Motion for New Trial and to Vacate the Judgment?

8. Did the trial court err in finding that Byers was the prevailing party and in awarding her more than $100,000 in attorney's fees and costs?

## DISCUSSION

### I. The Admissibility of the MMI Audit

The trial court did not err in considering both the MMI report and the experts' testimony concerning the MMI report. Byers asserts evidentiary arguments which she claims justify the trial court's ruling granting her partial summary judgment, and entitle her to an order from this court reversing the judgments which Mohave obtained below with regard to her fraud and breach of fiduciary duty.

■ As to her second claim, we note that to accept Byers's argument would require this court to grant Byers further relief by ordering dismissal of all claims which were supported by the MMI audit. Byers cannot seek such relief because she never crossappealed. Ariz. R. Civ.App. P. 13(b); *Bowman v. Bd. of Regents,* 162 Ariz. 551, 557, 785 P.2d 71, 77 (App.1989) (holding a party cannot attack judgment or seek to expand scope of judgment without filing a cross appeal). However, to provide instruction to the trial court upon retrial, we address Byers's three evidentiary arguments.

■ First, Byers argues that Mohave failed to establish the authenticity[2] of the MMI audit. The trial court has broad discretion in determining the admissibility of expert opinion evidence. *McGuire By and Through McGuire v. DeFrancesco*, 168 Ariz. 88, 92, 811 P.2d 340, 344 (App.1990). These principles apply to questions of the admissibility of evidence in summary judgment proceedings. *Gonzalez v. Satrustegui*, 178 Ariz. 92, 96, 870 P.2d 1188, 1192 (App.1993). This court deferentially reviews the evidentiary rulings of the trial court and affirms unless it finds clear abuse of discretion or legal error, and prejudice. *Gasiorowski v. Hose*, 182 Ariz. 376, 382, 897 P.2d 678, 684 (App.1994). Here, neither factor was present.

Applying the above concepts, we now review the trial court's admission of the MMI audit. First, in considering whether to grant Byers summary judgment, the trial court had to consider facts contained in Mohave's verified complaint, any deposition testimony and any formal or informal admissions[3] made by Byers and by her counsel. Ariz. R. Civ. P. 56(c); *Choisser v. State ex rel. Herman*, 12 Ariz.App. 259, 261, 469 P.2d 493, 495 (1970) (A court should consider a verified complaint in determining whether fact issues preclude summary judgment.); *King v. Dogan*, 31 F.3d 344, 345 (5th Cir.1994); *Peacock v. Samaritan Health Servs.*, 159 Ariz. 123, 125, 765 P.2d 525, 527 (App.1988) (A party need not attach documents in support of representations opposing summary judgment where an opposing party does not contest the accuracy of statements concerning such documents.).

Here, Mohave's verified complaint incorporated the findings of the MMI audit and attached copies of exhibits. Mohave also attached deposition testimony of its expert,

Maconachy, to substantiate his firm's audit report. It also presented Byers's own deposition testimony concerning the MMI audit. Byers herself relied upon the MMI audit to support her Statement of Facts in Support of Summary Judgment. All of those facts suffice to substantiate the authenticity of the MMI report.

■ We note that although we hold there is not an authenticity problem with the MMI audit, even if such a problem existed, absent prejudice, the trial court's admission of the report was not erroneous. *Gasiorowski*, 182 Ariz. at 376, 897 P.2d at 684. The evidence established that Byers had long been aware of the MMI audit; therefore she was not prejudiced.

■ Byers's second argument concerning the admissibility of the MMI audit asserts that there was no foundation for the audit because there is no evidence that it met recognized professional auditing standards. We reject that argument because it was not raised below. *A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 568, 892 P.2d 1354, 1357, *cert. denied*, —— U.S. ——, 116 S.Ct. 273, 133 L.Ed.2d 194 (1995) (The failure to make a specific evidentiary objection waives the objection for purposes of appeal of summary judgment.); *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir.1985). Additionally, Byers does not cite any case requiring an investigative audit to meet generally accepted accounting standards. *Ness v. Western Sec. Life Ins. Co.*, 174 Ariz. 497, 503, 851 P.2d 122, 128 (App.1992) (A court will not consider a contention on appeal unsupported by authority.). In any event, Byers's argument ignores the record because the audit itself

---

2. We note that Byers did not object to the MMI audit report's authenticity until her reply memorandum on summary judgment. The trial court apparently did not consider Byers's arguments concerning authenticity. *State v. Oakley*, 180 Ariz. 34, 36, 881 P.2d 366, 368 (App.1994) (holding a court should not consider arguments made for the first time in a reply memorandum); *see also Pima County v. INA/Oldfather 4.7 Acres Trust # 2292*, 145 Ariz. 179, 182, 700 P.2d 877, 880 (App.1984).

3. Rule 56(c) of the Federal Rules of Civil Procedure (which corresponds to Rule 56(c) of the Arizona Rules of Civil Procedure), provides that admissions on file which can be considered on summary judgment are not limited to formal admissions pursuant to Rule 36. 6 of the Federal Rules of Civil Procedure; 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.11 [1.—5] (2d ed.1988). In construing the Arizona Rules of Civil Procedure, Arizona gives great weight to constructions of the Federal Rules of Civil Procedure. *Edwards v. Young*, 107 Ariz. 283, 284, 486 P.2d 181, 182 (1971).

establishes in detail how it was conducted and its reliability.

■ Byers asserts a third attack on the admissibility of the MMI audit, arguing that the audit relied upon hearsay statements, and that therefore, the audit's conclusions are inadmissible unless the statements themselves are in evidence at trial. Byers mischaracterizes both the content of the MMI audit and the material which the auditors relied upon. The MMI audit was directly supervised by Mohave's expert. The MMI audit was primarily a document investigation wherein the auditors studied thousands of receipts and documents. The audit's reliance on the statements of others dealt mostly with tangential things such as Byers and Carpenter's relationship, not with the underlying foundation of the audit's conclusions pertaining to the document review.

Byers also relies on *Lynn v. Helitec Corp.*, 144 Ariz. 564, 568, 698 P.2d 1283, 1287 (App. 1984), in support of her claim that the MMI audit is not admissible based on hearsay. *Helitec* held that expert opinion testimony *at trial*, which was based on hearsay statements not introduced at trial, was not admissible. *Id.* Here, while the MMI audit discussed the statements of witnesses, it was based on the investigative review of documents kept in Mohave's business records and on Byers's own admissions. Therefore, *Helitec* is inapposite.

The MMI audit is admissible under Rule 703 of the Arizona Rules of Evidence, as being based on facts and business records received by an expert. *Id.* Rule 703 permits wide latitude in expert testimony to allow explanation of the facts underlying an opinion. Therefore, we hold that the trial court correctly admitted the MMI audit.

Finally, we reject Byers's fourth evidentiary argument pertaining to the admissibility of the MMI audit. Byers contends that the audit cannot be introduced unless the underlying facts are admissible, or are of the type reasonably relied upon by experts in the auditing field. Byers maintains that unless the underlying facts relied upon by the expert are admissible, the expert cannot testify to such facts except to illustrate the basis of his opinion.

First, Byers fails to articulate what supposed hearsay statements either the MMI audit or the expert relied upon. To the extent the audit's conclusions are premised upon Mohave's business records, those underlying records are admissible under Rules 803(6) and 803(7) of the Arizona Rules of Evidence. If Byers is arguing that the audit is not admissible because it discusses Byers and Carpenter's romantic relationship, that argument is specious because the audit never concluded that Mohave's records substantiated such a relationship, nor did most of the audit's conclusions rely on such statements. Indeed, the auditors reviewed Carpenter and Byers's daily calendars, which also are business records and which showed that they took vacations together at Mohave's expense. Therefore, the MMI audit was admissible.

We next discuss the trial court's fundamental errors: (1) the erroneous dismissal of Mohave's claims based on the 1,157 credit card transactions due to the trial court's misapplication of both the law governing summary judgment, and the law governing conspiracy, and (2) the misapplication of the standard pertaining to fraudulent concealment tolling the Statute of Limitations.

## II. The Trial Court Improperly Granted Partial Summary Judgment to Byers

The trial court granted partial summary judgment to Byers, issuing three separate rulings in its March 21, 1995, minute entry. An order granting summary judgment is reviewed *de novo*, applying the same test used for summary judgment by the trial court. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990). All evidence and the record presented at the time of the order must be viewed in the light most favorable to the nonmovant. *AROK Constr.*, 174 Ariz. at 293, 848 P.2d at 872. Summary judgment is appropriate only when one inference can be drawn from the undisputed facts, and those facts show that the moving party is entitled to judgment as a matter of law. *Pritchard v. Arizona*, 163 Ariz. 427, 433, 788 P.2d 1178, 1184 (1990). All inferences must be construed in favor of

the non-moving party, both at trial and on appeal. *Id.; see also Orme School v. Reeves,* 166 Ariz. 301, 309–10, 802 P.2d 1000, 1008–09 (1990).

Mohave maintains that the trial court erred in granting partial summary judgment to Byers, and that the court's order erroneously prohibited Mohave from introducing evidence both as to Byers's liability for Carpenter's various acts of wrongdoing and her independent liability for the 1,157 fraudulent expense packets. Mohave asserts that the court's error was threefold, and that the error entitles Mohave to a new trial. We agree and discuss each of the three erroneous rulings in turn.

### III. The Trial Court Erroneously Dismissed Mohave's Claims Based Upon the 1,157 Packets Concerning Misconduct

■ Mohave alleges that there were various acts by Byers and/or Carpenter which support Mohave's claims of fraud, negligence, breaches of duty and racketeering, including the 1,200 packets of materials developed in the MMI audit which reflect specific instances of Byers and Carpenter's fraudulent expense vouchers and credit card charges.

A defendant can obtain summary judgment when the plaintiff is unprepared to establish a *prima facie* case. *Orme School,* 166 Ariz. at 310, 802 P.2d at 1009. To do so, however, the defendant must "point out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the claim." *Id.; accord Hydroculture, Inc. v. Coopers & Lybrand,* 174 Ariz. 277, 283, 848 P.2d 856, 862 (App.1992).

In her Motion for Summary Judgment, Byers argued that Mohave failed to meet its burden to establish that the credit card transactions were unauthorized by Mohave, that Byers committed fraud, that Byers was liable for Carpenter's transactions, and that she participated in Carpenter's alleged misconduct. In that motion, Byers stated that she relied on Mohave's Rule 26.1 Disclosure Statement and on Mohave's responses to her discovery to "point out by specific reference to the relevant discovery" the issues on which Mohave cannot meet its burden of

proof. Byers simply stated that there was "no evidence" in the record upon which Mohave could meet its burden.

Byers misstates the record because the MMI audit had already been produced. Moreover, Byers herself relied on part of the MMI audit report to obtain summary judgment and Byers incorporated portions of the MMI audit in her Statement of Facts in Support of her Motion for Summary Judgment. More importantly, the trial court actually rejected Byers's limited contentions that the MMI audit report was not admissible when the court considered the audit in denying in part Byers's summary judgment motion. As discussed above, we affirm the trial court's admission of the MMI audit report.

The trial court decided to treat each of the 1,200 packets of fraudulent credit card and expense voucher submissions as separate claims. The court held that even though the MMI report concluded that there was no business purpose for any of the 1,200 packets of charges and vouchers, and that such vouchers were fraudulent, Mohave's failure in its response to Byers's motion for summary judgment to introduce specific evidence as to each and every one of the 1,200 transactions required summary dismissal of the 1,157 packets for which specific evidence was not presented. Therefore, the court dismissed Mohave's claims of fraud, negligence, breach of contract, breach of fiduciary duty, debt and racketeering based upon the 1,157 packets showing acts of wrongdoing. The court erroneously ruled that Mohave was limited to introducing evidence at trial relating to 43 alleged incidents of fraud and negligence because Mohave only attached 43 packets to its response to Byers's motion for summary judgment.

Rule 56(e) of the Arizona Rules of Civil Procedure, governing summary judgment, does not require a plaintiff to come forward with proof as to every single act of wrongdoing to prevent summary judgment on claims alleging an ongoing practice of fraud, negligence, breaches of duty and racketeering. In opposing summary judgment, a party does not have to present its entire case. That is

the purpose of a full trial. Rather, the party must only present sufficient facts to show a genuine factual dispute which a jury might reasonably believe. *See generally, Lowther v. Hopper Truck Lines,* 92 Ariz. 344, 346, 377 P.2d 192, 193 (1962); *Ainsa v. Salt River Valley Water Users Ass'n,* 6 Ariz.App. 290, 432 P.2d 149 (1967). All inferences from such evidence must be made in favor of the non-moving party. *Orme School, 166 Ariz. at 310, 802 P.2d at 1009.*

A party can present conclusions of experts to survive summary judgment. *Continental Bank v. Wa–Ho Truck Brokerage,* 122 Ariz. 414, 418, 595 P.2d 206, 210 (App.1979) (An expert's affidavits at least raised an issue of fact concerning commercial reasonableness to require a full trial.). Here, Mohave offered its expert's opinion concerning the pattern of fraud committed by Carpenter and Byers. The expert set forth the basis of his opinion and Mohave presented 43 examples of the type of conduct alleged.

■ An expert can rely on samples of tests or audits it conducted to oppose summary judgment. *Iacobelli Constr., Inc. v. County of Monroe,* 32 F.3d 19, 24 (2d Cir. 1994) (A party may present expert affidavits based on summarizing the applicable documents to resist summary judgment.); *see also Garnac Grain Co. v. Blackley,* 932 F.2d 1563, 1567 (8th Cir.1991) (The trial court erred in refusing to consider an expert accountant's report filed in opposition to a motion for summary judgment where the expert based his opinion on a full review of the plaintiff's books to determine the failure of the defendant accounting firm to discover employee embezzlement.); *see also United States v. Affleck,* 776 F.2d 1451, 1457–58 (10th Cir.1985) (The district court properly admitted testimony of an expert in a securities fraud case to testify concerning review of financial records and interviews with employees regarding the defendant's insolvency.).

In this case, Mohave presented the full report of its experts who conducted the MMI audit of Mohave's books. In conducting the MMI audit, the auditors reviewed Byers and Carpenter's calendars and all relevant depositions and pleadings, and also interviewed Mohave's employees. Based upon those documents and interviews, the auditing experts identified 1,200 transactions which they concluded showed the unauthorized use of credit cards and expense vouchers without a business purpose, the submission to Mohave of false receipts for reimbursement, and insufficiently documented expenses. Mohave offered 43 examples of those transactions to resist summary judgment. The examples demonstrated some of Byers's conduct which constituted negligence and other breaches of duty. That evidence was accompanied by Byers's own deposition testimony admitting her close relationship with Carpenter. That evidence was sufficient to avoid preclusion of evidence concerning the remaining transactions. *See Iacobelli,* 32 F.3d at 26.

To hold otherwise would lead to the absurd result that the longer a person embezzles from a corporation or breaches his or her managerial duties to stop such misconduct by others, the easier the person can avoid a judgment for such negligence. Thus, if the embezzlement continued for a long time, the employer would have to meet the burden at summary judgment of presenting evidence as to each act, i.e., if the conduct occurred over many years and included several thousand specific negligent acts, evidence as to each of those several thousand acts would have to be proven to avoid summary judgment. This is contrary to common sense. A plaintiff need not prove each specific act of negligence or fraud at the time of summary judgment.

■ Byers next argues that the trial court properly granted summary judgment on the 1,157 credit card transactions on the basis that Mohave's records and the MMI audit were inadmissible to raise a factual dispute concerning whether those expenses were for business or personal reasons. Byers erroneously construes the record. Byers maintains that Mohave did not require the recording of a business purpose for expenses, and that therefore the lack of any stated business purpose could not comply with Rule 803(7) of the Arizona Rules of Evidence. The evidence presented by Mohave at the time of summary judgment showed: (1) that Mohave had and enforced a requirement for accurate reporting of expenses; (2) Mohave required Byers and Carpenter to comply with all laws,

including Internal Revenue Service regulations requiring employers to accurately and completely document valid employee expense reports; and (3) Mohave required completion of forms for reimbursement. Moreover, Byers admitted in her deposition that she intentionally submitted false receipts rather than failing to submit any receipts. Therefore, the evidence of the 1,157 packets is admissible under Rule 803(7) of the Arizona Rules of Evidence.

Byers erroneously contends that the only basis for the MMI audit's conclusion that there was no business purpose for the transactions reflected in the 1,157 packets was the lack of any stated purpose in the records. In opposing summary judgment, Mohave produced 43 examples of expenses, having no business purpose, such as expenses Byers and Carpenter charged on vacations. Moreover, Byers admitted that she could not identify any business purpose for the 43 examples discussed during her deposition.

Next, Byers argues that for Mohave to avoid summary judgment on the 1,157 packets, Mohave either had to produce evidence concerning the lack of business purpose as to each of the 1,157 packets, or had to demonstrate that its sampling was valid. Both contentions are incorrect. First, an expert can provide a summary of his or her conclusions, indicating the facts upon which he based those conclusions. *See, e.g., Iacobelli,* 32 F.3d at 25. Additionally, Byers's argument is illogical because it treats each separate act of fraud as a different count of the complaint, entirely ignoring Mohave's claim of a conspiracy between Byers and Carpenter.

Here, Mohave presented its full audit report and all of the facts supporting the conclusions in the audit. Therefore, the MMI audit stated a conclusion fully setting forth the specific facts upon which it was based. *Cf., Florez v. Sargeant,* 185 Ariz. 521, 526, 917 P.2d 250, 255 (1996) (Expert affidavits of psychologists which were submitted by individuals who alleged they had been sexually and physically abused several years prior to bringing their complaint were conclusory and did not set forth specific facts to support the psychologists' opinions.).

Finally, Byers contends that the 43 packets were inadmissible to show the personal nature of the other 1,157 expenses because there was no evidence demonstrating the validity of the sampling. Byers's argument confuses the use of sampling and the use of examples to illustrate an expert's findings. A true sampling of a set of facts relies solely on the sample itself to prove the validity of the conclusion as to the remaining facts which were not sampled. Whereas, in this case, the auditors examined each and every expense report and examined more than 2,000 instances of financial transactions involving Byers and Carpenter. The MMI audit found no business purpose for 1,200 of the transactions the auditors reviewed. The 43 packets served as examples at Byers's deposition to show types of instances involving financial transactions by Byers and/or Carpenter involving Mohave funds which had no legitimate business purpose.

If Mohave had been allowed to proceed to trial on the other 1,157 packets, Mohave would have had the opportunity to prove the lack of business purpose as to all the transactions. To require Mohave to introduce specific evidence of the lack of a business purpose as to all 1,157 transactions would improperly require Mohave to put forward all of its evidence to defeat summary judgment. Byers does not cite nor can we find any authority requiring a litigant to prove its entire case to defeat a motion for summary judgment. *Ness,* 174 Ariz. at 503, 851 P.2d at 128 (The court will not consider a contention on appeal that is unsupported by authority.).

In any event, Byers's argument does not prevail because, as discussed below, we hold that the trial court fundamentally erred when it misconstrued the applicable law concerning both when fraudulent concealment tolls the Statute of Limitations and conspiracy. Moreover, the trial court ignored Mohave's claim that Byers was independently liable for failing to fulfill her duty of good faith and fair dealing to Mohave. These mistakes permeated the flawed reasoning used by the trial court in ruling that in order to defeat summary judgment, Mohave had to introduce

specific evidence of the lack of business purpose for each of the 1,157 transactions.

## IV. The Trial Court Erroneously Dismissed Mohave's Claims Against Byers for her Negligence in Failing to Stop Carpenter's Defalcations

In determining whether Mohave was pursuing Byers for Carpenter's defalcations solely on principles of joint and several liability through a conspiracy, the trial court found that Byers could not be liable for acts solely committed by Carpenter. The court therefore dismissed claims based on Carpenter's illegal aid to a construction project which was partially owned by a close friend of Carpenter's who was a member of the board. The trial court also dismissed Mohave's claims concerning Carpenter's expense advances and mileage to professional membership meetings, Carpenter's changes to the insurance policy, the fuel delivered to Carpenter's ranch, and the purchase of a truck bed trailer.

■ The trial court erred in dismissing Mohave's claims because in its complaint, Mohave contended that Byers should be held liable for those acts by Carpenter based upon a conspiracy, agency or acting-in-concert theory, as well as for her own negligence. While the trial court held that the issue of Byers's liability for conspiracy was left for trial, without any explanation, the court erroneously concluded that there was no basis to hold Byers liable for any of Carpenter's wrongdoing.

Mohave presented both lay deposition testimony and expert opinion concerning the personal relationship between Carpenter and Byers. There was sufficient evidence to overcome summary judgment that Byers acted in concert with Carpenter, including: (1) the trial court held that Byers was liable for fraud as to other improper transactions; (2) there was evidence of Carpenter and Byers expending Mohave's funds for joint vacations and other socializing; (3) there was evidence that Carpenter and Byers lived together and jointly owned property; and (4) there was evidence that Byers and Carpenter collaborated to expend Mohave's monies to purchase a truck for Byers's father.

■ As noted above, all inferences from such circumstantial evidence, including Carpenter and Byers's personal relationship, their other acts of misconduct, and the evidence in the audit's fraudulent expense packets, should have been made in favor of Mohave. *Orme School*, 166 Ariz. at 310, 802 P.2d at 1009; *Pritchard*, 163 Ariz. at 433, 788 P.2d at 1184. Here, if all such evidence had been submitted to a jury, as demanded, the jury could have found a conspiracy extending to Carpenter's other acts. Instead, the trial court erroneously dismissed claims against Byers as to such other misdeeds on summary judgment. The existence of a conspiracy may be inferred from the nature of the acts, the relationship of the parties, "the interests of the conspirators, or other circumstances," and "express agreement or tacit concert will, if proven, suffice to create liability." *In re American Continental Corp./Lincoln Savings and Loan Secs. Litigation*, 794 F.Supp. 1424, 1437 (D.C.Ariz.1992).

We therefore reverse the trial court's order granting Byers partial summary judgment because a litigant can proffer circumstantial or inferential evidence to prove that parties were acting in concert. There was at least a fact issue that Byers and Carpenter were acting as each other's agents, or were intentionally acting pursuant to a common course of conduct to wrongfully use Mohave funds for personal gain. A.R.S. §§ 12–2506(D) and (F)(1) (Supp.1995). In so doing, we also hold that the trial court erroneously ruled that evidence of a conspiracy as to one aspect of fraudulent conduct (the expense packets developed in the MMI audit) could not be used to show an agreement as to other kinds of fraud, i.e., the insurance policy, reimbursement of expenses to Carpenter for attending professional organization meetings, and the use of company employees and fuel for personal profit.

■ The trial court's compartmentalization of proof and conspiracy was erroneous as a matter of law because such compartmentalization of a defendant's allegedly wrongful conduct can result in the incongruous result of a court viewing several improper acts in isolation and finding nothing wrong with each

act when viewed as unrelated to all other acts. In *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698–99, 82 S.Ct. 1404, 1410, 8 L.Ed.2d 777 (1962), the United States Supreme Court held:

> It is apparent from the foregoing that the Court of Appeals approached Continental's claims as if they were ... completely separate and unrelated lawsuits. We think this was improper. In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.... [T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.... [A]nd in a case like the one before us, the duty of the jury was to look at the whole picture and not merely at the individual figures in it.

(Internal citations omitted.)

The trial court erroneously compartmentalized each facet of the alleged conspiracy between Carpenter and Byers. Therefore, the court erroneously concluded that a jury could not infer that if Byers and Carpenter were shown to have conspired to defraud Mohave as to expenses, that Byers and Carpenter also conspired to defraud Mohave through Carpenter's other acts.

We next discuss Mohave's entitlement to a trial concerning Byers's direct liability for allegedly negligently fulfilling her job responsibilities.

## V. The Trial Court Erred in Ruling That Mohave Was Not Entitled to Trial on its Direct Claim Against Byers for Her Negligence

■ Mohave is entitled to proceed to trial and to prove that Byers, as Mohave's assistant general manager and supervisor of the accounting department, directly and proximately *permitted* and participated in dishonest transactions. *See, e.g., Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 551–52, 617 P.2d 56, 61 (App.1980) (holding negligence includes both acts and omissions that breach standards of care). Summary judgment for

Byers was therefore incorrect pursuant to *Orme School* and *Pritchard*.

The trial court erred because it ignored Mohave's separate claim that Byers was negligent in failing to stop Carpenter's defalcations, *e.g.*, (1) that as the assistant general manager who supervised the accounting and finance departments, Byers breached her independent fiduciary duty to Mohave, and (2) she also breached her employment contract.

Carpenter and Byers, as general manager and assistant general manager, respectively, owed Mohave and its members fiduciary duties including honesty, loyalty, fair play, fair dealing and good faith. *McCallister Co. v. Kastella*, 170 Ariz. 455, 457, 825 P.2d 980, 982 (App.1992). Carpenter and Byers also were contractually obligated both to act honestly, fairly and in good faith in their dealings with Mohave, and to comply with Mohave's policies. *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975) (When a party fails to keep the agreements, he is liable for damages for his failure to perform.).

At trial, the expert who conducted the MMI audit testified that, as Mohave's second highest employee, who often acted in Carpenter's stead, Byers had an independent duty of good faith and fair dealing to Mohave and also a duty to report any defalcations, including Carpenter's misdeeds, to Mohave's board. He testified that as the accounting supervisor, Byers was responsible for ensuring Mohave was in compliance with state and federal laws concerning the proper tracking of expenses.

Mohave maintains that by her careless, reckless and negligent conduct, Byers breached her duties to Mohave, and that, as a result, Mohave was directly and proximately damaged in an amount to be determined at trial. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983).

As assistant general manager, often acting as the general manager, Byers had to comply with Mohave's written policies requiring the general manager to provide oversight, care and management of the company's assets, and to exercise control over accounting procedures and records, and to comply with all

laws. 3 SEYMOUR D. THOMPSON & JOSEPH W. THOMPSON, THOMPSON ON CORPORATIONS § 1615 (3rd ed. 1927) (The corporate vice president is required to undertake the duties of the president in the president's absence.); *see also* 19 C.J.S. *Corporations* § 469 (1990).

William Kelley, who was one of the members of the board during Byers's tenure as the assistant general manager, testified in his deposition that Byers had an independent fiduciary duty to Mohave. He testified that Carpenter was absent from Mohave between 40% to 50% of the time due to business-related travel, and that during Carpenter's absence, Byers was responsible for Mohave's day-today operations, including running the board's meetings.

During the bench trial, Mohave's counsel preserved this issue for appeal, and correctly argued that Byers had a non-delegable, separate and independent duty to be honest; not to self-deal and not to steal Mohave's money. Therefore, Mohave submitted specific facts to the trial court in support of its direct claim against Byers for her negligence. The evidence was clearly sufficient to require denial of summary judgment.

In *Wa–Ho Truck Brokerage*, Wa–Ho's bookkeeper had taken checks written to and by Wa–Ho, and diverted them to his own account both through unauthorized endorsements and by having Wa–Ho issue duplicate checks to persons whom Wa–Ho had already paid and then endorsing them to his own account. 122 Ariz. 414, 416, 595 P.2d 206, 208. Wa–Ho sued the bank for both conversion and breach of warranty. The bank moved for summary judgment in part on the basis of expert affidavits indicating the experts were familiar with banking practices concerning such checks, had reviewed various pleadings and discovery, and it was their opinion that in accepting the checks for deposit, the bank acted in good faith and in accordance with reasonable commercial standards. Despite those affidavits, the trial court granted summary judgment for Wa–Ho. 122 Ariz. at 418, 595 P.2d at 210.

This court reversed, holding that the opinions were sufficient for Rule 56 purposes under Rules 703, 704 and 705 of the Arizona Rules of Evidence, that experts could testify without giving any reasons and without prior disclosure of the underlying facts, and that experts could testify to ultimate facts. *Id.* We held that the affidavits at least raised an issue of fact concerning commercial reasonableness to require a full trial. *Id.* at 420–21, 595 P.2d at 212–13.

In this case, Mohave offered specific evidence of Byers's duty as assistant general manager, of her negligent failure to fulfill that duty, and of the resulting harm to Mohave. Despite this evidence, the trial court erroneously refused to allow Mohave to go forward and prove such negligence at trial regardless of whether there was a conspiracy. Under *Orme School* and *Wa–Ho*, Mohave produced evidence which created genuine disputes of material fact relating to both Byers's duty to find and prevent Carpenter's misconduct and her breach of that duty. We therefore reverse the trial court's ruling.

## VI. The Trial Court Incorrectly Issued Rulings which were Contrary to the Record and which Ignored Byers's Breach of Her Independent Duties to Mohave

The trial court made several findings which ignored Byers's alleged breach of her independent duties to Mohave. A trial court's general factual conclusions are reversed if they are clearly erroneous. Ariz. R. Civ. P. 52(a). However, where a court applies a theory of liability to facts, its ruling is a mixed question of law and fact which is reviewed *de novo*. *Lee Dev. Co. v. Papp*, 166 Ariz. 471, 476, 803 P.2d 464, 469 (App.1990).

Byers maintains that summary judgment was proper with regard to her alleged joint and several liability for the misdeeds of Carpenter because the official policies of the board vested broad power and discretion in the general manager, and because only Carpenter used those powers and discretion. Byers also reasons that she cannot be jointly and severally liable for Carpenter's actions because she had no authority or ability to exercise any control over Carpenter. Byers argues that it was Carpenter's job to enforce the rules, not hers. In arguing to the trial

court, Byers's counsel stated: "What she [Byers] was doing was simply to take the low road to business expenses reporting. And the evidence will show that road had been well traveled by her superiors at the cooperative before her." Clearly, those arguments do not prevail because, as noted above, Byers had an independent duty to Mohave and could not rely upon the fact that Carpenter and others had failed to fulfill their own independent duties to Mohave.

Byers also argued to the court that the board had no formal written policy concerning what expenses could be paid on the corporation account or what activities Carpenter or his subordinates should report and account as their reimburseable expenses. The MMI audit determined that from 1983 to 1990, Carpenter received cash advances on approximately 100 occasions but only turned in six expense reports. Essentially, Byers maintained that it was Mohave's business practice not to turn in expense accounts.

However, three witnesses, the expert who conducted the MMI audit and authored the audit report, Monika Colby, the accountant, and Lyn Borah, a member of the board, testified concerning the policies and procedures in place at the time Byers admittedly submitted false requests for reimbursement. They all explained that Mohave required all employees to submit expense reimbursement reports demonstrating the business purpose relating to expenditures. While Borah testified that Mohave did not have formal written policies concerning that requirement in place at the time, Colby testified that she had been given guidelines from Carpenter to require detailed expense vouchers. Moreover, Borah testified that Byers told her that she had to submit detailed expense vouchers. Finally, Byers admitted in her deposition that she had to submit receipts for expenses and testified that occasionally she had submitted such detailed expense vouchers on Mohave reimbursement forms and that she had also submitted false requests for reimbursement.

When an erroneous ruling has been made, the trial court must prevent a "miscarriage of justice" and order a new trial. *King v. Superior Court*, 138 Ariz. 147, 152, 673 P.2d 787, 792 (1983); *see also Smith v. Moroney*, 79 Ariz. 35, 38, 282 P.2d 470, 472 (1955) (If the verdict is contrary to the weight of evidence, it is the court's duty to set aside the verdict and grant a new trial.). Clearly, the trial court erroneously ruled that Mohave had no policies applicable to finance and accounting for funds. That portion of the court's ruling, based on the erroneous finding that no accounting policies were in place, must be vacated and a new trial must be granted.

The trial court's conclusion that Byers could not be held jointly and severally liable for Carpenter's actions was also infected by its earlier summary judgment ruling that Mohave was precluded from introducing evidence regarding the 1,157 expense packets which the MMI audit examined, but which were not specifically documented in Mohave's response to Byers's motion for summary judgment. Consideration of that evidence could have resulted in the court and a jury concluding that Byers bore responsibility, individually and/or jointly for the fraud, either as Carpenter's agent or due to her acting in concert with Carpenter. A.R.S. §§ 12–2506(D) and (F).

## VII. The Trial Court Erroneously Barred Mohave's Claims Under the Statute of Limitations

The trial court ruled that the Statute of Limitations barred many of Mohave's claims relating to the 43 transaction packets which Mohave was allowed to address at trial. The court also applied the Statute of Limitations to bar all claims based on negligence and breach of fiduciary duty prior to December 23, 1989, and claims in fraud and oral contract prior to December 23, 1988. The court held that Mohave was "on notice of the actions of Carpenter and office business practices prior to the formal investigation," and that the Statute of Limitations began to run regardless of whether employees considered accepted or known business procedures to be fraudulent. The court accepted Byers's argument in moving to dismiss claims based on the Statute of Limitations that Mohave, as the principal, had imputed knowledge for Carpenter and Byers's wrongdoing through

the knowledge of its agents, Colby and the Texas accountant.

Mohave argues that in dismissing its claims based on the Statute of Limitations, the trial court erred as a matter of law because it applied the wrong standard for fraudulent concealment. While the trial court's factual findings as to the Statute of Limitations would normally be reviewed for clear error, that rule does not apply where there is a mixed finding of fact and law, or where there is a clear error of law. In those cases, the findings are reviewed *de novo*. *Arizona Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

■ Generally, wrongful concealment will toll the Statute of Limitations. *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 159, 871 P.2d 698, 706, (App.1994). To avoid the issue of fraudulent concealment, Byers argued that Mohave, as the principal, had imputed knowledge of Byers and Carpenter's wrongdoing through the knowledge of its agents, Colby and the Texas accountant. That argument was premised upon the general rule that knowledge acquired by an agent in the course of employment is imputed to a principal. *In re Estate of Milliman*, 101 Ariz. 54, 65, 415 P.2d 877, 888 (1966); Restatement (Second) of Agency § 275 (1958); *see also Ulibarri*, 178 Ariz. at 159, 871 P.2d at 705 (A positive act to conceal a wrong will toll the Statute of Limitations.).

However, given the facts in the record, such a "positive act to conceal wrong" tolls the Statute of Limitations. *Ulibarri*, 178 Ariz. at 159, 871 P.2d at 705. At trial, Colby testified that in January 1987, she was suspicious of Carpenter and Byers's embezzlement. Colby testified that she knew she would be fired if she went to either Byers, her immediate supervisor, or to Carpenter regarding her concerns. Therefore, she reported her concerns to Mohave's Texas accountant, who was hand-picked by Carpenter.

The trial court ruled that Mohave had imputed knowledge of the misconduct in January 1987, when Colby first reported her suspicions to the Texas accountant. Therefore, the court dismissed all claims based on

negligence and breach of fiduciary duty occurring prior to December 23, 1989, as those claims are governed by A.R.S. section 12–542 which provides for a two-year Statute of Limitations. Similarly, the trial court ruled that the Statute of Limitations barred all claims of fraud and oral contract occurring prior to December 23, 1988, as those claims are based on a threeyear Statute of Limitations pursuant to A.R.S. section 12–543.

The trial court's ruling that the Statute of Limitations commenced in January 1987 was erroneous under the facts in the record. Colby testified that as early as January 1987, she talked to Mohave's outside accountants about Carpenter using his company credit card on weekends for possible personal purposes and his not reporting cash advance expenses. When Colby went to the accountant concerning her suspicions about Carpenter, the accountant, whose firm had been hired by the board at Carpenter's request, told her that he would go to either Carpenter or to the board to discuss her concerns. The evidence is undisputed that the accountant never went to the board. It is unclear from the record whether the accountant went to Carpenter, who presumably could have told him the expenses were authorized, and who could have then continued to conceal his alleged previous embezzlement. It is unclear whether the accountant took any action at all. Therefore, viewing the facts most favorably for Mohave, there is a question of fact regarding whether Carpenter continued to engage in more embezzlement before he left Mohave in late 1990. The accountant's knowledge could not be imputed to Mohave because neither he nor Carpenter, one of the employees allegedly guilty of misconduct, informed the board of the problem and because the other employees who suspected wrongdoing were precluded from personally reporting to the board.

■ The trial court erred because imputed negligence does not trigger the Statute of Limitations when (1) the agent is acting adversely to the principal, or (2) the information continues to be actively concealed. In *Manley v. Ticor Title Ins. Co.*, 168 Ariz. 568, 572–73, 816 P.2d 225, 229–30 (1991), the Ari-

zona Supreme Court held that the rule of imputed notice does not apply when the agent notified of the information may actually be serving his own purposes by acting adversely to the principal:

> The rule that notice to the agent is notice to the principal is premised on the presumption that the agent will perform his obligation to give his principal knowledge relevant to the principal's protection and interest.... However, the presumption ... 'will not prevail where it is certainly to be expected that the agent will not perform his duty, as where the agent ... is in reality acting in his own or another's interest and adversely to that of his principal.' In such cases the presumption is that the agent will conceal any facts which might be detrimental to his own interests, rather than that he will disclose it.

*Id.* at 572, 816 P.2d at 229 (internal citations omitted).

Under the facts in the record, Byers cannot successfully rely on Colby's suspicions to commence the running of the Statute of Limitations. It was undisputed that the board's policy prohibited Colby from reporting directly to the board. She had to communicate with the board through either Byers or Carpenter. Under the Restatement (Second) of Agency section 275 (1994), Mohave cannot have imputed knowledge of Colby's knowledge where Colby had no duty or ability to inform the board and where, indeed, Carpenter and Byers were able to prevent her knowledge from ever reaching the board.

Finally, absent notice of alleged misconduct, Mohave's directors did not have a duty to review the details of Mohave's financial records department to uncover Byers and Carpenter's misconduct. The directors were entitled to rely upon the integrity of their general and assistant general managers, both not to defraud Mohave, and to report any misconduct. *See Dotlich v. Dotlich,* 475 N.E.2d 331 (Ind.App.1985) (Fiduciary relationship among directors relieves innocent directors from having to exercise diligence to guard against guilty director's misappropriation of assets through an independent study of the corporate books.). Corporate directors are therefore not required to micro-

manage the day-to-day operation of a company if they have no knowledge or notice of any possible misconduct.

■ The trial court concluded that the evidence relating to the fraudulent concealment did not support Mohave's claim that the fact that financial irregularities existed was unknown until the MMI audit was conducted. That conclusion is contrary to the evidence in the record. It was undisputed that the board was not informed of the fraudulent expense vouchers and use of the credit card at least until 1990 or 1991. For sufficient notice to begin the Statute of Limitations, the plaintiff must have knowledge of both "what" and "who" caused its damage. *Lawhon v. L.B.J. Inst. Supply, Inc.,* 159 Ariz. 179, 181, 765 P.2d 1003, 1005 (App.1988) (A plaintiff must have sufficient knowledge concerning both what and who caused the injury; plaintiff did not have sufficient knowledge of which distributor caused injury where she was told that one or more distributors may have caused injury to the deceased.).

Here, Byers admitted in her Motion to Dismiss pursuant to Rule 41(b) of the Arizona Rules of Civil Procedure, that Colby testified that she went to the Texas accountant about Carpenter's weekend credit card charges, but that she had not said anything to the accountant "specifically about Mrs. Byers." Colby testified: "We spoke about credit card charges for Mr. Carpenter and Sue Byers. She [Byers] did not have an account on the statement under her name [rather she only had] a card." Thus, the outside accountant was not aware of Byers's unauthorized credit card use or of her fraudulent expense vouchers anymore than the plaintiff in *Lawhon* was aware that a particular defendant had injured her husband when she was told that the distributor of the product causing the injury was one of several companies.

Moreover, when the evidence and all inferences therefrom is viewed in a light most favorable to Mohave, Byers continued to fraudulently conceal her defalcations. It was undisputed that when Byers submitted false expense vouchers, she would change the amounts of those expenses so that they could

not be compared to those same expenses appearing on the credit card statement. Such actions by Byers fraudulently concealed her conduct.

Therefore, we reverse the trial court's ruling that the Statute of Limitations precluded Mohave from introducing evidence probative of its claims against Byers based on negligence and breach of fiduciary duty prior to December 23, 1989, and on evidence probative of its claims of fraud and breach of oral contract against Byers prior to December 23, 1988.

## VIII. The Trial Court Erred in Denying Mohave's Motion for New Trial

■ Mohave filed a Motion for New Trial, or in the alternative, a Motion to Vacate the Judgment. Each of the arguments which Mohave made in its Motion for New Trial was also set forth in Mohave's Motion for Summary Judgment. The trial court denied both motions.

A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *Cano v. Neill*, 12 Ariz.App. 562, 567–68, 473 P.2d 487, 492–93 (1970). In determining whether the trial court abused its discretion, thereby necessitating a new trial, this court is guided by three primary principles:

(1) This court can substitute its judgment for that of the trial court. *Ulibarri*, 178 Ariz. at 164, 871 P.2d at 711 ("[I]n ruling on a motion to vacate a judgment the exercise of the trial court's discretion must be supported by facts or sound legal policy and the appellate court can 'look over the shoulder' of the trial court and substitute its judgment for that of the trial court . . . [w]hen the record reveals circumstances that this court believes warrants relief. . . .").

(2) If the trial court applied an erroneous legal standard, the litigant is entitled to a new trial. *Brown v. Superior Court*, 137 Ariz. 327, 332, 670 P.2d 725, 728 (1983).

(3) This court construes all facts most favorably for upholding the decision below. *Beal v. State Farm Mut. Auto. Ins. Co.*, 151 Ariz. 514, 516, 729 P.2d 318, 320 (App. 1986).

In denying the Motion for New Trial, the trial court again erroneously ignored Mohave's claim that Byers breached her independent duty to uncover and report any malfeasance in business expense transactions to the board.

As discussed above, the trial court also erroneously ruled that Mohave was precluded from submitting evidence on Byers and Carpenter's pattern of fraud because, in contesting Byers's Motion for Summary Judgment, Mohave did not submit specific evidence of fraud or breach of fiduciary duty as to each of the 1,200 MMI audit packets. In so ruling, the trial court again erroneously treated each separate expense count as a separate count in the complaint and improperly compartmentalized each separate aspect of the alleged general conspiracy between Byers and Carpenter. In considering the Motion for New Trial, the court again erred in ruling that Byers was entitled to partial summary judgment on almost all misconduct other than the conduct addressed in the 43 expense packets. In so doing, the court again improperly isolated each aspect of the conspiracy (those relating to expense packets and those relating to all other alleged misdeeds).

Finally, in denying Mohave's Motion for New Trial and to Vacate the Judgment, the court also erred in ruling that the Statute of Limitations barred claims based as to most of the 43 expense packets because the court again misapplied the standard of fraudulent concealment. Therefore, we reverse the trial court's rulings and remand this case for a new trial as to all claims against Byers consistent with this opinion.

## IX. Attorneys' Fees

Because the judgment is reversed and a new trial is required, the award of attorneys' fees must also be reversed as premature because neither party is the "successful party" as required by A.R.S. section 12–341.01. *See U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.*, 146 Ariz. 250, 259, 705 P.2d 490, 499 (App.1985). We deny Byers's request for attorney's fees incurred in this appeal.

## CONCLUSION

For the reasons stated above, we reverse and remand this case for a new trial on all claims against Byers. We also reverse the trial court's award of attorney's fees to Byers as premature. Finally, we decline to award attorney's fees incurred by Byers on this appeal.

THOMPSON, P.J., and GERBER, J., concur.