NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of:

THE CARLOYN KLARE ZURWELLE LIVING TRUST

CLAIRE LOSACKER, *Petitioner/Appellee,*

*v.*

LENORE ZUR WELLE, *Respondent/Appellant.*

No. 1 CA-CV 25-0713 PB

FILED 05-21-2026

Appeal from the Superior Court in Maricopa County
No. PB2024-090157
The Honorable Joshua Yost, Judge Pro Tem

**AFFIRMED**

COUNSEL

Claire Losacker, Gilbert
*Petitioner/Appellee*

Lenore Zur Welle, Vista
*Respondent/Appellant*

## MEMORANDUM DECISION

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

J A C O B S, Judge:

¶1 In this probate dispute, Lenore Zur Welle appeals the superior court's order granting Claire Losacker summary judgment as to disputes over Claire's administration of their mother's living trust. Because the record supports the superior court's distribution of the Trust's assets, and does not support Lenore's claim she was not served with Claire's motion for summary judgment, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2008, Carolyn Klare Zur Welle ("Mother") created the Living Trust ("the Trust") in Arizona. Under the terms of the Trust, Mother's three daughters Lenore, Claire, and Winkie Schwartz were beneficiaries. The Trust names Claire as its trustee.

¶3 In 2017, Mother moved with Lenore to an assisted living facility in California, where she remained until her death in 2021. After Mother's death, Claire acted as the trustee. She retained law firms in California and Arizona to help her administer Mother's estate: Tresp Law, Berk Law, and Taylor Trust Law.

¶4 To administer Mother's estate, Claire collected assets, closed accounts, filed taxes, and prepared an accounting of the estate. During this period, disputes arose between Claire and Lenore regarding Lenore's debt to the Trust. With those disputes unresolved, Claire petitioned the superior court in June 2024 to approve a final accounting and distribution.

¶5 Critical here, Claire's petition alleged that Lenore owed the Trust $17,724.32, consisting of: (1) $15,000 characterized as an advance on her inheritance; (2) four $500 checks allegedly treated as advances; and (3) $724.32 in unauthorized debit card charges. Lenore objected to the final accounting. She acknowledged borrowing the $15,000 but argued that $5,000 should be restored to her share. Lenore also disputed the characterization of the four $500 checks as debts. Finally, Lenore challenged the reasonableness and transparency of the fees of the estate's counsel.

¶6            Claire and Lenore conferred repeatedly but couldn't resolve their disputes. Claire moved for summary judgment, seeking resolution of the debt issues, approval of the accounting, and authorization to proceed with the final distribution. Claire's motion attached evidence, including communications with Lenore, accounting summaries, attorney billing records, and an email in which Lenore described the four $500 checks as borrowed funds. Her motion included a certificate of service, stating that it was mailed to Lenore at her California address.

¶7            After Lenore failed to respond to the motion, and Claire filed a notice of no response, the court granted the motion for summary judgment. In its ruling, the court found no genuine dispute of material fact as to the accounting and distribution of Lenore's debt or the accounting of attorneys' fees. It also found the attorneys' fees were reasonable, incurred in the administration of the Trust, and in accordance with A.R.S. § 14-10813(A) and (C), and ordered Claire to submit a proposed form of judgment.

¶8            Lenore moved the court to reconsider its ruling granting summary judgment, claiming Claire didn't serve the motion on her, keeping her from responding. Claire responded that she properly served Lenore by mailing her a copy of the motion on January 17, 2025 and emailing her a copy on January 21, 2025.

¶9            The court denied Lenore's motion to reconsider and signed Claire's proposed form of judgment and final distribution. Lenore timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(1), (A)(9).

## DISCUSSION

¶10           We review the superior court's legal conclusions *de novo* and accept its factual findings unless they are clearly erroneous. *Cravens v. Montano*, 259 Ariz. 444, 448 ¶ 11 (2025). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the movant "is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

¶11           On appeal, Lenore argues: (1) Claire did not serve her with the motion for summary judgment; (2) the court erred in approving the distribution of Lenore's $17,724.32 debt; and (3) the court erred in approving the estate's attorneys' fees charges.

¶12 Lenore has not supported her arguments with "adequate explanation, citations to the record, or authority." *In re Aubuchon*, 233 Ariz. 62, 65 ¶ 6 (2013); Ariz R. Civ. App. P. 13(a)(7). However, even when a party fails to comply with court rules, we may still, in our discretion, decline to apply the doctrine of waiver "to decide cases on their merits." *Clemens v. Clark*, 101 Ariz. 413, 414 (1966). Addressing each of Lenore's arguments in turn, we find no error.

## I. The Court's Implicit Finding that Claire Served the Motion for Summary Judgment on Lenore Was Not Clearly Erroneous.

¶13 Lenore argues the superior court improperly granted summary judgment because Claire did not serve her with the motion. Arizona Rule of Civil Procedure 5(c)(2)(C) permits service by "mailing it . . . to the person's last-known address." Ariz. R. Civ. P. 5(c)(2)(C). Because "service is complete upon mailing," it is not dependent on the opposing party's receipt of that document. *Id.*; *McEvoy v. Aerotek, Inc.*, 201 Ariz. 300, 304 ¶ 19 (App. 2001). However, we have previously held that a trial court may entertain evidence rebutting the rule's presumption that the document in question was received. *McEvoy*, 201 Ariz. at 305 ¶ 24.

¶14 Here, the motion for summary judgment included a certificate of service stating it was mailed to Lenore at her California address. This certificate creates a strong presumption of receipt, because courts in Arizona have a "long-held understanding that mail properly sent will reach its destination." *Lee v. State*, 218 Ariz. 235, 237 ¶ 10 (2008); *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993).

¶15 Lenore's mere contention that she did not receive the motion is insufficient to rebut this presumption for three reasons. *First*, the address on the certificate of service matches that provided by Lenore on her superior court filings and on appeal. *Second*, Lenore offers no evidence of non-delivery, such as returned mail, delivery irregularities, or contemporaneous communications. *Third*, the record reflects that Claire emailed Lenore the motion (including the certificate of service) four days after Claire first filed it and certified she served it on Lenore, which allowed Lenore to raise any issue with service before the superior court ruled, which she failed to do. Because Lenore did not effectively rebut the presumption of service, the court's implicit finding that Claire served Lenore was not clearly erroneous. *See Cravens*, 259 Ariz. at 448 ¶ 11. Accordingly, the court did not err in denying Lenore's request that it reconsider its summary judgment ruling on the basis of nonservice.

**II.    The Superior Court Did Not Err By Approving the Estate's Treatment of Lenore's Debt in the Final Distribution, as There Was No Genuine Dispute of Material Fact as to That Debt.**

¶16        Lenore argues the court erred by approving the Trustee's accounting reflecting her $17,724.32 debt.  In particular, she objects to the Trustee deducting the $15,000 Lenore owed to the Trust from the Trust's final distribution to her.  Lenore also claims the accounting improperly treated four $500 checks from Mother to her as debts, and that they should have been classed as gifts.

¶17        First, Lenore acknowledges she borrowed $15,000 from the estate but contends that $5,000 of it should be returned to her, given that she was one of three beneficiaries of the Trust.  The court correctly rejected this argument, noting "this is not how a debt is treated."  Instead, under A.R.S. § 14-2110, a debt owed to a decedent is only held against the debtor, and under A.R.S. § 14-3903, a debt owed by a beneficiary will be offset against their share.

¶18        The final accounting followed that law by treating Lenore's debt as an asset of the estate and offsetting it against her share.  Returning $5,000 to Lenore, as she requested, would have improperly reduced the estate while relieving her of a portion of her admitted obligation, in contradiction to the rule set forth in A.R.S. § 14-3903.  The court thus correctly concluded that offsetting Lenore's entire $15,000 debt complied with Arizona law.

¶19        The court also did not err when it ruled the four $500 checks were debts, not gifts.  Under A.R.S. § 14-2109(A), transfers to a beneficiary will be held against their share when the heir provides "written acknowledgment . . . indicat[ing] that the gift is to be taken into account in computing the division and distribution of the decedent's intestate estate."  A.R.S. § 14-2109(A).  Lenore provided just such written acknowledgment.  The court relied on e-mails in which Lenore described those checks as borrowed against her inheritance.  Again, we see no error.

**III.    The Court Did Not Err By Finding the Estate's Attorneys' Fees Reasonable, Properly Incurred, and Adequately Accounted.**

¶20        Lenore contends that the court erred in approving Claire's use of Trust funds to pay attorneys' fees, claiming the fees were excessive, lacked transparency, and were used to litigate against her rather than for the benefit of the Trust.  However, she identifies no specific charges that

5

were unreasonable and offers no evidence contradicting the accounting. *See* Ariz. R. Civ. App. P. 13(a)(7).

**¶21**         To the extent the record allows us to evaluate Lenore's arguments, it supports the superior court's finding the attorneys' fees were reasonable, incurred in the course of the administration, and beneficial to all beneficiaries.  A trustee is authorized to incur reasonable expenses, including legal fees, in administering a trust.  A.R.S. §§ 14-10805, -11004.  A trustee also has a duty to keep beneficiaries reasonably informed about the administration and related expenses.  A.R.S. § 14-10813(A), (C).  Claire retained Tresp Law, Berk Law, and Taylor Trust Law to assist with administration.  Claire provided documentation of their fees, including invoice summaries and account records, sharing those materials with Lenore.  And the court also found Claire complied with statutory disclosure requirements.

**¶22**         Lenore appears to suggest the estate's fees were improper because they were incurred to "strategize" against her.  But the mere existence of disputes with a beneficiary does not render such expenses improper.  Fees incurred in litigation related to trust administration, even for litigation against a beneficiary, may be properly charged to the trust when they are reasonable and serve the interests of the trust as a whole.  A.R.S. §§ 14-10805, -11004.  The record demonstrates the fees were incurred addressing disputes with Lenore.  Lenore points to no evidence creating a genuine dispute of material fact as to the propriety of the fees. *See* Ariz. R. Civ. P. 56(a).  On this record, the superior court did not err in concluding that the attorneys' fees were reasonable, properly incurred, and adequately accounted for.

**CONCLUSION**

**¶23**         For the foregoing reasons, we affirm the superior court's grant of summary judgment, approval of the final accounting, and authorization of the Trust's final distribution.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR

6